# Richmond

COMMONWEALTH OF VIRGINIA V. J. S. SANDERSON.

March 10, 1938.

Present, All the Justices.

The opinion states the case.

*Abram P. Staples, Attorney-General,* and *S. W. Shelton, Assistant Attorney-General,* for the Commonwealth.

*James E. Cannon* and *J. Elliott Drinard,* for the appellee.

HOLT, J., delivered the opinion of the court.

Must chauffeurs or other employees of the Commonwealth, its agencies or political subdivisions, pay a license tax?

In House Bill 339, passed by the General Assembly and approved March 26, 1932, Acts 1932, ch. 342, p. 613, we find "The Motor Vehicle Code of Virginia." That act undertakes to consolidate, simplify and restate all relevant statutes. This is section 36 of that Code:

"Chauffeurs' license, how obtained; form of license.— Any person other than the owner of a motor vehicle or a member of his family, which has been registered and licensed to be operated in this State, whose principal duty or occupation requires him to drive a motor vehicle, and any person other than the owner, who drives a motor vehicle while in use as a public or common carrier of persons or property before he shall operate a motor vehicle in this State shall first take out a chauffeur's license, which shall expire on March thirty-first of each year. The applicant shall make application to the director which application shall give the name of the applicant, his residence, post office address, age and experience in operating motor vehicles, and shall be sworn to before some officer authorized to administer oaths. There shall be appended to such application a statement by two reputable citizens, that the ap-

plicant is a fit person and is competent to operate such vehicle.

"On the payment of five ($5.00) dollars, the director shall issue to such applicant a license and badge, which license and badge shall be carried by the chauffeur at all times while operating a motor vehicle, the badge to be plainly in evidence upon the lapel of the chauffeur's cap. The form of license shall be prescribed by the director.

"Provided that no charge shall be made for the issuance of a chauffeur's license to firemen, policemen or other officers or employees of the State, or any of its political subdivisions or agencies which may be necessary in connection with the operation of motor vehicles owned by the State, its political subdivisions or agencies."

House Bill 103 was enacted at the same session of the General Assembly and was approved March 29, 1932, Acts 1932, ch. 385, p. 775. It deals specifically with the licenses of chauffeurs and the penalties to be assessed against them for negligent operations. Subdivision (b) of section 10 in part reads:

" * * * On and after the first day of July, nineteen hundred and thirty-three, no other person, except those expressly exempted as hereinbefore provided for, shall drive any motor vehicle on any highway in this State unless and until such person shall have satisfactorily passed the examination required by subsection (a) of this section and obtained either an operator's or a chauffeur's license, which shall be issued upon the payment of a fee of fifty (50) cents for each operator's license and a fee of two ($2.00) dollars for each chauffeur's license; and all such licenses so issued from the first day of July, nineteen hundred and thirty-three, until the thirtieth day of June, nineteen hundred and thirty-four, shall expire by their own limitation, on the last mentioned date; provided, that any chauffeur's license so issued within said period, shall upon the payment of a fee of five ($5.00) dollars, be issued to expire on the thirtieth day of June, nineteen hundred and thirty-six."

Neither of these acts contains an emergency clause. The act of March 26, 1932, declares that "all acts and parts of acts in conflict with this act are hereby repealed." Section 123, Acts 1932, ch. 342, p. 674. The act of March 29, 1932, provides that "all acts or parts of acts inconsistent with the provisions of this act are hereby repealed." Acts 1932, ch. 385, p. 785, section 35. Both of them took effect ninety days after the adjournment of that session of the legislature. Constitution of Virginia, section 53.

On February 17, 1936, the General Assembly amended and re-enacted section 10 of the act of March 29, 1932 (Acts 1936, ch. 22, pp. 36, 37). It left the provisions as to the payment of fees for chauffeurs' licenses untouched, amending it in other particulars, which have no bearing upon the issue presented here.

On December 23, 1936, the city attorney for the city of Richmond advised that municipality that in his opinion the Commonwealth had no authority to require the payment of this license fee by its employees. Thereupon the city assumed the obligation of paying this fee, if required by law, and instructed him to have the question adjudicated. Thereupon this proceeding for a declaratory judgment was instituted. It came on in due course to be heard. The trial court was of opinion that this fee should not be charged against the city's chauffeurs and so decreed. Hence this appeal.

It thus appears that for four years the officers charged with the enforcement of these statutes had been of opinion that such fees should be charged and had assessed and collected them.

In *South East Public Service Corporation* v. *Commonwealth*, 165 Va. 116, 181 S. E. 448, 452, Mr. Justice Eggleston quotes with approval this statement of the law from *Smith* v. *Bryan*, 100 Va. 199, 40 S. E. 652, applicable in such cases:

"So, also, the practical construction given to a statute by public officials, and acted upon by the people, is not only to be considered, but, in cases of doubt, will be regarded as

decisive. It is allowed the same effect as a course of judicial decision. The legislature is presumed to be cognizant of such construction, and, when long continued, in the absence of legislation evincing a dissent, the court will adopt that construction."

A host of cases have been cited to the effect that ·statutes *in pari materia,* but apparently in conflict, should be construed together, and that any apparent inconsistencies should be ironed out whenever that is possible. A late restatement of this rule appears in *Scott* v. *Lichford,* 164 Va. 419, 180 S. E. 393. It attains added weight when such statutes are passed at the same session of the legislature and is well expressed in *Mitchell* v. *Witt,* 98 Va. 459, 36 S. E. 528:

"Statutes which are not inconsistent with one another, and which relate to the same subject matter, are *in pari materia,* and should be construed together; and effect should be given to them all, although they contain no reference to one another, and were passed at different times. Especially should effect be given, if possible, to statutes *in pari materia* enacted at the same session of the Legislature."

All of this appellant properly concedes to be good law. Moreover, the intention of the legislature is to be followed whenever possible. *Jones et al.* v. *Rhea,* 130 Va. 345, 107 S. E. 814.

But as was said by Keith, P., in *Saville* v. *Virginia Ry. & P. Co.,* 114 Va. 444, 76 S. E. 954, 957:

"It is contended that the construction insisted upon by the plaintiff in error is violative of the spirit or reason of the law. The argument would seem to concede that the contention is within the letter of the law. We hear a great deal about the spirit of the law, but the duty of this court is not to make law, but to construe it; not to wrest its letter from its plain meaning in order to conform to what is conceived to be its spirit, in order to subserve and promote some principle of justice and equality which it is claimed the letter of the law has violated. It is our duty to take the words which the legislature has seen fit to employ and give to

them their usual and ordinary signification, and having thus ascertained the legislative intent, to give effect to it, unless it transcends the legislative power as limited by the Constitution."

The repeal by implication is not favored, but if inevitable is as effective as is an express statutory mandate.

"While as a general rule the repeal of a statute by implication is not favored, it is clearly recognized by all of the authorities that such a repeal is called for where there is substantial conflict between the two statutes being considered, and the subject matter of the first statute is fully covered by the second." *Sale* v. *Board of Education* (W. Va.), 192 S. E. 173, 176.

The act of March 29th does not leave us to constructions and to implications only. "All acts or parts of acts inconsistent with the provisions of this act are hereby repealed." The legislature must have meant something by this declaration.

Inconsistencies cannot be reconciled. This is only possible where they are apparent rather than real. A casual view of approaching trains may make a collision appear inevitable, and yet they may pass on sidings not at first seen.

These principles are well illustrated by cases cited and relied upon by appellee.

In *City of Richmond* v. *Drewry-Hughes Co.*, 122 Va. 178, 90 S. E. 635, 94 S. E. 989, it appears that the city of Richmond imposed upon the capital of merchants an *ad valorem* tax in excess of thirty cents on the hundred dollars. At the extra session of 1915, ch. 85, the General Assembly passed what is known as the State tax segregation act, which set apart for the purpose of State taxation intangible personal property, subject, however, to this exception:

" * * * provided that nothing herein contained shall prevent any city from levying a tax upon said segregated intangible personal property assessed to the residents therein at a rate not to exceed thirty cents upon the one hundred dollars of assessed valuation thereof; * * * except that the capital of merchants shall not be subject to State taxation

but may be taxed locally as prescribed by law; and the shares of stock of banks * * * which shares of stock shall be taxed as provided by law."

The court held that the capital of merchants could still be taxed "as prescribed by law;" and that this expression extended this power beyond the limits of the proposed act and covered such rights as the city then enjoyed, and further that "as prescribed by law" meant something more than "as prescribed by this act," which would have been apt words had the limitation contended for been intended. There was here no real conflict.

In *School Board* v. *Alexander,* 126 Va. 407, 101 S. E. 349, 352, the same principles were applied. By one statute, clause 25 of section 1105f, Code of 1904, the trustees of any school district were given, through the right of eminent domain, the power to take by condemnation any land, building, structures, etc., necessary for its use. No limits were imposed. But section 1488 of that Code provided that no parcel of land in excess of one acre in a town, nor dwelling, garden or yard should be taken. It was easy to reconcile this apparent conflict. The court in the course of its opinion adverted to another important rule:

"Another rule of construction is that where there are two statutes, the earlier special and the later general—the terms of the general broad enough to include the matter provided for in the special—the fact that one is special and the other general creates a presumption that the special is to be considered as remaining an exception to the general, and that the general will not be considered as repealing the special, unless the provisions of the general are manifestly inconsistent with those of the special."

This rule was restated in *Scott* v. *Lichford, supra.*

If a general statute does not repeal an earlier one of special import, then for a stronger reason it would not overrule one thereafter enacted. To apply this principle to the instant case the act of March 29th, which deals only with chauffeurs, cannot be supplanted by an earlier motor vehicle code.

In *Piedmont, etc., Corporation* v. *Commonwealth,* 146 Va. 287, 135 S. E. 673, it appears that there was a statute which provided that a certificate of title to an automobile, issued by the Secretary of the Commonwealth, showing a lien thereon, should be adequate notice to the public and need not be recorded where the purchaser resided. Another statute provided that an automobile seized when transporting liquor should be forfeited to the Commonwealth, and that to defeat forfeiture as affecting a lien holder the contract of sale must be recorded in the county in which the debtor resided. These two acts were approved on the same day. The court said that there was no conflict here; that the motor vehicle act applied only to civil rights, while the prohibition act dealt with those violations of the law which imposed both forfeiture and punishment.

Indeed in all of these cases, it becomes apparent upon examination that the conflict was apparent rather than real, and not being real, apparent inconsistencies were explained away.

Just how a statute which declares that no license charge shall be made to a certain class of chauffeurs and one which declares that such a tax shall be paid by them can be reconciled, we do not know. The act of March 29, 1932, assesses this charge against every one "except those expressly exempted as hereinbefore provided for."

Those exemptions or exceptions noted, four in number, do not cover the class in judgment. There are other conflicts between these two statutes. So far as the exemptions claimed are concerned, there is a head-on collision. In such a case, that last approved by the Governor must prevail.

"A bill becomes an act when it is approved by the Governor, or becomes a law without his signature. (See section 76, Constitution of Virginia). When two bills are signed by the Governor on the same day (as was the case with these two acts), they are to be regarded as having become 'acts' simultaneously, neither one before the other. Under these circumstances a provision in the emergency

act (which becomes effective instantly), providing that 'all acts or parts of acts in conflict herewith are hereby repealed,' is not to be construed as speaking of an act which comes into being simultaneously with it, but of acts which were acts when it became an act." *Mahoney* v. *Commonwealth,* 162 Va. 846, 174 S. E. 817, 820.

To wipe away the plain provisions of the act of March 29, 1932, would be to make a law and not to construe a statute.

For reasons stated, the decree appealed from should be reversed, and it is so ordered.

*Reversed.*