## Richmond

TILLMAN LAUREAN PRILLAMAN v. COMMONWEALTH OF VIRGINIA.

October 14, 1957.

Record No. 4718.

Present, All the Justices.

The opinion states the case.

*John D. Epperly* and *W. R. Broaddus, III* (*Broaddus, Epperly & Broaddus,* on brief), for the plaintiff in error.

*D. Gardiner Tyler, Assistant Attorney General* (*J. Lindsay Almond, Jr., Attorney General,* on brief), for the Commonwealth.

SNEAD, J., delivered the opinion of the court.

■ Tillman Laurean Prillaman was found guilty of operating a motor vehicle in the County of Henry after his operator's license had been suspended in violation of § 46.347.2, Code 1950, as amended. The jury fixed his punishment at a fine of $200 and confinement in jail for a period of ninety days. The trial court overruled Prillaman's motion to set aside the verdict and entered final judgment thereon. We granted accused an appeal.

On September 1, 1953 the Commissioner of the Division of Motor Vehicles entered an order, effective September 15, 1953, suspending appellant's driving license. The validity of the order of suspension is not questioned and it was outstanding and effective on June 8, 1956, the date on which he was admittedly operating his wife's automobile.

On that night at approximately 10 P. M., four state troopers were assembled at Master Forks Service Station, owned and operated by Basil Setliff, at Bassett Forks in Henry County. The lot upon which the service station is located is "V" shaped and is bounded on one side by Route 220 and on the other by Route 57. The officers testified that they first observed appellant's vehicle on the lot approximately 20 feet off Route 220 headed south and that he proceeded a distance of about 50 feet, parked the car in front of the service station building and entered it. At no time was appellant seen driving by the officers or any one else other than on the service station property.

Appellant stated that his wife had driven the automobile to the station that afternoon and he was to come by later and have the spare tire "fixed". He further testified that a boy named Rakes drove him to the station and he moved the car from the rear of the station to the front to have the tire repaired; that before driving the automobile he saw the officers standing in front of the station, and that he knew his operator's license had been suspended, but did not think he was prohibited from driving on private property.

Setliff related that the Prillaman car had been parked in the rear of his establishment "for quite a while" before he saw appellant drive it to the front of the station.

The ultimate and controlling question to be decided is whether appellant, whose operator's license had been suspended, violated § 46-347.2, Code 1950 as amended, when he drove a motor vehicle on the private property of Master Forks Service Station.

Section 46-347.2 provides:

"Notwithstanding any other provisions of law, no person whose

operator's or chauffeur's license has been suspended or revoked by any court or by the Commissioner shall, after such suspension or revocation shall have terminated, drive any motor vehicle in this State unless and until such license has been reinstated or a new license issued in accordance with law. Any person violating the provisions of this section shall be guilty of a misdemeanor, and, upon conviction thereof, punished accordingly."

In order to determine the applicability of § 46-347.2, *supra*, to the facts in the case at bar, it is necessary to consider whether the provision therein "drive any motor vehicle in this State" was intended by the General Assembly to be limited to driving on any "highway" as defined in § 46-1(8), Code 1950. If this limitation was the intent of the General Assembly, then it must be decided whether a privately owned lot used in the conduct of a service station business is a "highway" within the meaning of § 46-1(8).

An "operator" is defined in § 46-343(3), Code 1950, as "Every person, other than a chauffeur, in actual physical control of a motor vehicle on a highway."

The requirement of a license to operate a motor vehicle is provided for under § 46-347, Code 1950, and reads as follows:

"No person, except those expressly exempted in §§ 46-348 to 46-352, shall drive any motor vehicle on any highway in this State until such person shall have made application for an operator's or chauffeur's license, as hereinafter provided, and satisfactorily passed the examination required by § 46-365 and obtained either an operator's or chauffeur's license, unless such person shall have been issued an operator's or chauffeur's license prior to June nineteenth, nineteen hundred and forty-six that is renewable in the discretion of the Division.".

The 1952 General Assembly repealed § 46-211, which was in Chapter 4 under Regulation of Traffic. This section specified the penalty for a person operating any motor vehicle upon any highway in this State while his license is suspended or he is forbidden to drive. At the same session of the General Assembly §§ 46-347.1 and 46-347.2 were enacted in lieu of § 46-211 and were placed in Chapter 5 under the appropriate heading, Operators' and Chauffeurs' License Act, following § 46-347, *supra*.

Section 46-347.1 provides as follows:

"No person whose operator's or chauffeur's license has been suspended or revoked by any court or by the Commissioner shall there-

after drive any motor vehicle in this State unless and until such suspension or revocation shall have terminated. Any person violating the provisions of this section shall for the first offense be confined in jail not less than ten days nor more than six months, and for the second or any subsequent offense be confined in jail not less than two months nor more than one year; and may in addition be punished by a fine of not less than one hundred nor more than one thousand dollars."

Section 46-211, which was repealed, follows:

"If any person shall drive any vehicle upon any highway while his license is so suspended or while so forbidden to drive or operate a motor vehicle in this State, he shall be punished by imprisonment in jail for a period not less than two days nor more than six months and there may be imposed in addition thereto a fine of not more than five hundred dollars."

Appellant contends that even though the phrase "public highway" is not mentioned in § 46-347.2, it is evident from the basic requirement contained in § 46-347 that a person obtain an operator's license to drive a motor vehicle "on any highway in this State" and from other parts of the Act, that the forbidden operation is upon the public highways in this State.

On the other hand the Commonwealth argues that when the General Assembly enacted §§ 46-347.1 and 46-347.2, it intended to put teeth in the law and deprive the operator whose license had been suspended or revoked of the right to drive any motor vehicle anywhere in this State, whether it be on or off a highway. It is further argued that if this were not true, there would have been no useful purpose in enacting these new sections since § 46-211, which was repealed, had a provision which already prohibited a person whose license was suspended from driving on any "highway".

Section 46-1(27), Code 1950, defines "vehicle" as "Every device in, upon or by which any person or property is or may be transported or drawn upon a highway, except devices moved by human power or used exclusively upon stationary rails or tracks."

The definition of "Motor vehicles" is set forth in § 46-1(13), Code 1950, which provides as follows: "Every vehicle as herein defined which is self-propelled or designed for self-propulsion."

It will be observed that by repealing § 46-211 and adding §§ 46-347.1 and 46-347.2, the General Assembly made a distinction between the punishment for driving before the suspension or revocation

period has expired and the punishment for driving after the suspension or revocation period has terminated but before the license has been reinstated or a new license issued. In the former case (§ 46-347.1) a violation carries a penalty for the first offense of confinement in jail not less than ten days nor more than six months, and for the second or subsequent offense confinement in jail not less than two months nor more than one year, and may in addition thereto be punished by a fine of not less than one hundred dollars nor more than one thousand dollars. In the latter case (§ 46-347.2), a violation is a misdemeanor and the punishment, as fixed by § 46-385, is by a fine of not more than five hundred dollars or by imprisonment for not more than six months in jail, or by both such fine and imprisonment. Thus we see the minimum sentence for driving before the suspension or revocation period has expired was increased for the first offense and provision made for a greater penalty for a second or subsequent violation.

The general rule is that statutes may be considered as *in pari materia* when they relate to the same person or thing, the same class of persons or things or to the same subject or to closely connected subjects or objects. Statutes which have the same general or common purpose or are parts of the same general plan are also ordinarily considered as *in pari materia*. 50 Am. Jur., Statutes, § 350, p. 347.

In 50 Am. Jur., Statutes, § 349, pp. 345, 346, 347, it is said:

"Under the rule of statutory construction of statutes in pari materia, statutes are not to be considered as isolated fragments of law, but as a whole, or as parts of a great connected, homogeneous system, or a single and complete statutory arrangement. Such statutes are considered as if they constituted but one act, so that sections of one act may be considered as though they were parts of the other act, as far as this can reasonably be done. Indeed, as a general rule, where legislation dealing with a particular subject consists of a system of related general provisions indicative of a settled policy, new enactments of a fragmentary nature on that subject are to be taken as intended to fit into the existing system and to be carried into effect conformably to it, and they should be so construed as to harmonize the general tenor or purport of the system and make the scheme consistent in all its parts and uniform in its operation, unless a different purpose is shown plainly or with irresistible clearness. It will be assumed or presumed, in the absence of words specifically indicating the contrary, that the legislature did not intend to innovate on, unsettle, dis-

regard, alter or violate a general statute or system of statutory provisions the entire subject matter of which is not directly or necessarily involved in the act." See also 17 M. J., Statutes, § 40, p. 293, 82 C. J. S., Statutes, § 365, p. 799.

The author of Sutherland Statutory Construction, 3rd Ed., In Pari Materia and Adopted Statutes, Vol. 2, § 5201, p. 529 has this to say: "Provisions in an act which are omitted in another act relating to the same subject matter will be applied in a proceeding under the other act, when not inconsistent with its purposes."

In *Mitchell* v. *Witt*, 98 Va. 459, 461, 36 S. E. 528, the court stated:

"Statutes which are not inconsistent with one another, and which relate to the same subject matter, are *in pari materia*, and should be construed together; and effect should be given to them all, although they contain no reference to one another, and were passed at different times. Especially should effect be given, if possible, to statutes *in pari materia* enacted at the same session of the Legislature." This principle was quoted with approval in *Commonwealth* v. *Sanderson*, 170 Va. 33, 39, 195 S. E. 516. Cf. *Wilson* v. *State*, 117 Tex. Crim. Rep. 63, 36 S. W. 2d 733.

In *Seaboard Finance Corporation* v. *Commonwealth*, 185 Va. 280, 286, 38 S. E. 2d 770, we said:

It is a cardinal rule of construction that statutes dealing with a specific subject must be construed together in order to arrive at the object sought to be accomplished."

Unquestionably, the General Assembly did not intend, by enacting either § 46-347.1 or § 46-347.2, to deprive a person, whose driver's license has been suspended or revoked, of the right to operate power lawn mowers on private property, some of which may be classified as motor vehicles as defined in the Act. That is precisely the effect if "on any highway" is not read into these sections of the Code.

The suspension or revocation of an operator's license is not intended as a punishment to the driver, but is designed solely for the protection of the public in the use of the highways. *Butler* v. *Commonwealth*, 189 Va. 411, 423, 53 S. E. 2d 152.

When we consider that an operator is defined as a person, other than a chauffeur, who is in actual physical control of a motor vehicle on a "highway"; that a motor vehicle is defined as every device, which is self-propelled or designed for self-propulsion, in, upon or by which any person or property is or may be transported or drawn upon a "highway" and that the basic statute, § 46-347, requires a person to

obtain an operator's or chauffeur's license, with certain specified exemptions, in order to drive any motor vehicle "on any highway in this State", we reach the certain conclusion that the intent of the General Assembly in enacting §§ 46-347.1 and 46-347.2, which were additions to § 46-347, was to limit the punishment for forbidden operation of any motor vehicle to cases of operation on any highway in this State.

This brings us to the question whether a privately owned lot used in connection with the operation of a service station is a "highway".

Section 46-1(8), Code 1950, defines highway as "Every way or place of whatever nature open to the use of the public for purposes of vehicular travel in this State, including the streets and alleys in towns and cities."

In reference to this section of the Code (formerly § 2154(49)(f), Michie's Code 1942) we said in *Crouse v. Pugh*, 188 Va. 156, 164, 49 S. E. 2d 421:

"This section needs no construction. Its meaning is perfectly plain, comprehensive and unambiguous. It does not limit the meaning of the word 'highway' to a hard-surfaced or partly hard-surfaced way or to a dirt and gravel way. It does not confine a highway to the main-travelled portion of the way or to lanes specifically designated for vehicular traffic. No exception is made as to the shoulders or slopes of a way. The nature of the way or place is not determined by whether the way is improved or consists of dirt and gravel. The paving of a way does not make it a 'highway.' The true test is whether the 'way or place of whatever nature' is 'open to the use of the public for purposes of vehicular travel.' We find nothing in the context of the Motor Vehicle Code which indicates a different meaning."

In 25 Am. Jur., Highways, § 4, p. 340, it is stated:

"Highways are distinguished from private roads or ways in that the former are intended for the use of the public generally and are maintained at the public expense, as already noted, while the latter are intended for the exclusive use and benefit of particular persons. Giving a private way a name does not make it a public highway or thoroughfare."

The premises of Setliff, owner and operator of Master Forks Service Station, were open to the public upon his invitation. The invitation was for private business purposes and for his benefit. He had

the absolute right at any time to terminate or limit this invitation. He could close his doors and bar the public or any person from vehicular travel on all or any part of his premises at will. He had complete control of their use.

This is not the case with regard to a public highway, as it is a way open to the general public without discrimination, distinction or restriction except to regulate in order to secure to the general public the maximum benefit therefrom and enjoyment thereof. There must be common enjoyment on the one hand and the duty of public maintenance on the other. It is the right of travel by everyone and not the exercise of the right that establishes a way a public highway. 25 Am. Jur., Highways, § 2, p. 339.

We conclude that the service station premises of Setliff were not "open to the use of the public for purposes of vehicular travel" and were, therefore, not a "highway" as defined in § 46-1 (8), Code 1950.

The judgment is reversed, the verdict set aside and the prosecution dismissed.

*Reversed and dismissed.*