# COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:    Judges Huff, O'Brien and Senior Judge Frank
Argued by teleconference


BILLY EVERETT, S/K/A
  BILLY WILSON EVERETT

                                        MEMORANDUM OPINION[*] BY
v.      Record No. 1679-18-1              JUDGE ROBERT P. FRANK
                                               APRIL 14, 2020
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Jerrauld C. Jones, Judge

Andrew M. Sacks (Sacks & Sacks, P.C., on briefs), for appellant.

Lauren C. Campbell, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


Billy Wilson Everett, appellant, was tried by a jury and convicted of involuntary

manslaughter, in violation of Code § 18.2-35; defiling a dead body, in violation of Code

§ 18.2-126(B); and concealing a dead body, in violation of Code § 18.2-323.02.  On appeal,

appellant challenges only the sufficiency of the evidence to sustain the defilement conviction and

did not appeal his other convictions.  For the reasons stated below, we challenge the defilement

conviction.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

The facts relevant to this appeal are not in controversy.[1] Duane Goodson responded to a "very important" phone call from appellant's mother on November 15, 2007.[2] When Goodson arrived at the Everett home, he noticed that appellant and his parents were panicked, and they told him that Lori Jordan, appellant's girlfriend, was dead. Goodson had seen appellant arguing and "being physical" with Jordan the day before. Appellant had told Goodson that he wanted custody of his daughter and that Jordan had not been cooperative.

Appellant asked Goodson to help him dispose of Jordan's body. Goodson and appellant placed her body in a clear trash bag, put that bag into a green duffle bag, and then rolled the body in a red rug. They left the body in a bedroom until the next evening when appellant and Goodson placed the body in the back of appellant's vehicle and drove around Norfolk while they discussed where best to dispose of the body.

Arriving at Barraud Park in Norfolk, they removed the body from the vehicle and placed it between bushes by the river next to the park. The area was filthy, littered with pill bottles and used condoms. They picked Barraud Park because the victim's death would look "more like something that happened in that neighborhood, and it wouldn't raise [suspicion] towards [appellant]." At appellant's request, Goodson had the vehicle's tires changed so that the tread marks would not match any marks subsequently identified at the park. Appellant's parents paid Goodson $10,000 to help dispose of the body.

---

[1] We state the facts in the light most favorable to the Commonwealth, the prevailing party at trial. Gerald v. Commonwealth, 295 Va. 469, 472 (2018).

[2] Goodson had sold heroin to appellant and his parents in the past.

- 2 -

On December 28, 2007, James Belcher, a senior utilities supervisor for Norfolk, found a deceased female human body covered with leaves at Barraud Park. The body was missing an arm, was shirtless, and the head was becoming detached.

Norfolk Forensic Investigator Eric Henderson and Sergeant Christopher Scallon, a homicide detective, were dispatched to Barraud Park. Henderson walked the scene, took photographs, and collected nearly sixty items, including beer bottles and cans, cigar butts, packaging for gauze, a piece of paper with boot prints on it, and several more items that could be characterized as garbage. Scallon observed that the torso of the body was not clothed, but had pants and a belt, the finger and toenails were painted, and the main cavity of the body was open, as if an animal had been inside it.

Appellant told the police officers who investigated Jordan's death initially that he had not seen her after she had left his parents' house to get more drugs on November 15, 2007. The case lay dormant until 2012 when Investigator Victor Powell interviewed Goodson on a separate matter. Goodson implicated appellant and his mother in Jordan's death. Goodson talked with Powell again in 2014 and admitted his own role in the crime. Appellant was charged in 2016 with first-degree murder of Jordan and defiling and concealing her body.

Dr. Leah Bush, former Chief Medical Examiner, testified at trial regarding Jordan's autopsy. Dental records were used to identify the badly decomposed body. No obvious external injuries were immediately apparent, but Dr. Bush found a large area of hemorrhage on the skull under the skin, which indicated blunt force trauma to the head. A toxicology report indicated the presence of morphine, cocaine, and alcohol in the body.

This appeal follows.

ANALYSIS

Appellant argues, as he did at trial, that to "defile" a body under Code § 18.2-126(B) requires proof that he committed a specific physical act to Jordan's body, separate and apart from abandoning her body to decompose over time.[3] He also argues that the meaning of "defile" in Code § 18.2-126(B) has the same meaning as "defile" in Code § 18.2-48, i.e., "sexually molest." Appellant thus asserts that the evidence was insufficient to convict him because there was no evidence that he sexually molested Jordan's dead body.

When an appellant challenges the sufficiency of the evidence supporting a conviction, "the judgment of the trial court shall not be set aside unless it appears from the evidence that such judgment is plainly wrong or without evidence to support it." Code § 8.01-680. When reviewing the sufficiency of the evidence, this Court "must . . . ask whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Cheung v. Commonwealth, 63 Va. App. 1, 8 (2014) (quoting Crowder v. Commonwealth, 41 Va. App. 658, 663 (2003)). "If there is evidence to support the conviction, an appellate court is not permitted to substitute its own judgment for that of the finder of fact, even if the appellate court might reach a different conclusion." Id. (quoting Conrad v. Commonwealth, 31 Va. App. 113, 123 (1999) (*en banc*)). "This deferential standard of review 'applies not only to the historical facts themselves, but [also to] the inferences from those facts.'" Bennett v. Commonwealth, 69 Va. App. 475, 492 (2018) (quoting Crowder, 41 Va. App. at 663 n.2).

Although raised as a sufficiency issue, the essence of appellant's argument turns on statutory interpretation. A question of "statutory interpretation" is reviewed *de novo* on appeal.

---

[3] Contrary to appellant's contention that his disposal of Jordan's corpse was not a physical act within the ambit of Code § 18.2-126(B), his actions of concealing the body in bags and a rug and then dumping it in a filthy area of a park were physical acts that showed disrespect for the body.

Sarafin v. Commonwealth, 288 Va. 320, 325 (2014). Where statutory construction is necessary, an appellate court construes a statute to "'ascertain and give effect to the intention' of the General Assembly." Farhoumand v. Commonwealth, 288 Va. 338, 343 (2014) (quoting Rutter v. Oakwood Living Ctrs. of Va. Inc., 282 Va. 4, 9 (2011)). Penal statutes must be "strictly construed against the Commonwealth," but "[a] defendant is not 'entitled to a favorable result based upon an unreasonably restrictive interpretation of [a] statute.'" Grimes v. Commonwealth, 288 Va. 314, 318 (2014) (quoting Ansell v. Commonwealth, 219 Va. 759, 761 (1979)).

Code § 18.2-126 states the following:

A. If a person unlawfully disinters or displaces a dead human body, or any part of a dead human body which has been deposited in any vault, grave or other burial place, he is guilty of a Class 4 felony.

B. If a person willfully and intentionally physically defiles a dead human body he is guilty of a Class 6 felony. For the purposes of this section, the term "defile" shall not include the autopsy or the recovery of organs or tissues for transplantation, or any other lawful purpose.

The term "defile" is not defined in the statute. Appellant contends, however, that the term should be interpreted the same way it is in Code § 18.2-48(ii), which equates "defile" with "sexually molest." See Fitzgerald v. Commonwealth, 223 Va. 615, 632-33 (1982) (holding that in a prosecution for abduction with intent to defile, the trial court did not err in giving a jury instruction that used the term "sexually molest" instead of "defile" because "the terms are interchangeable within the meaning of the statute"); Simms v. Commonwealth, 2 Va. App 614, 617 (1986) (citing Fitzgerald and noting that "abduction with intent to defile requires an intent to sexually molest a victim of any [gender]").

Code § 18.2-48 states in part:

Abduction (i) of any person with the intent to extort money or pecuniary benefit, (ii) of any person with the intent to defile such person, (iii) of any child under sixteen years of age for the purpose

of concubinage or prostitution, (iv) of any person for the purpose of prostitution, or (v) of any minor for the purpose of manufacturing child pornography shall be punishable as a Class 2 felony.

Subsections ii, iii, iv, and v of Code § 18.2-48 involve sexual offenses. Defining "defile" in Code § 18.2-48(ii) as "sexual molestation" comports with the offenses described in subsections iii, iv, and v. "Statutes which have the same general or common purpose or are parts of the same general plan are . . . ordinarily considered as *in pari materia*." Lucy v. County of Albemarle, 258 Va. 118, 129 (1999) (quoting Prillaman v. Commonwealth, 199 Va. 401, 405 (1957)).

However, where the legislative intent of two statutes is not the same, the definition applied in one statute cannot be transferred to the other. See Alston v. Commonwealth, 274 Va. 759, 769 (2007) (statutes should not be construed *in pari materia* where "a different purpose is shown plainly or with irresistible clearness" (quoting Prillaman, 199 Va. at 405)). The legislative intent of Code § 18.2-126 is to protect the sanctity of both a burial place and a dead body, wherever situated. That is not the same intent encompassed in Code § 18.2-48. Accordingly, the meaning of "defile" in Code § 18.2-126(B) is not limited to the meaning of "defile" in Code § 18.2-48.[4]

"An undefined term must be 'given its ordinary meaning, given the context in which it is used.'" Dressner v. Commonwealth, 285 Va. 1, 9-10 (2013) (quoting Sansom v. Board of Supervisors, 257 Va. 589, 594-95 (1999)). Black's Law Dictionary defines "defile" as:

> 1. To make dirty; to physically soil. 2. To make less pure and good, esp. by showing disrespect; to dishonor. 3. To make ceremonially unclean; to desecrate. 4. To morally corrupt (someone). 5. *Archaic*. To debauch (a person; to deprive (a person) of chastity.

---

[4] We need not decide whether sexually molesting a corpse, in fact, would constitute defiling a corpse under Code § 18.2-126(B) because that is not the case before us.

Defile, Black's Law Dictionary (11th ed. 2019). A fair reading of the above definition would refer to acts that disrespect, dishonor, or desecrate a dead body, in contrast to disinterring a body that has been deposited in a grave.

The term "defile" also is found in other statutes in the Code that do not use the term in a sexual context. For example, Code § 3.2-900 defines "nuisance birds" as those "species declared . . . to cause economic loss in the Commonwealth; becoming detrimental to the public health and welfare; defacing or defiling public or private property or otherwise creating a public nuisance." Code § 3.2-901(B) states that "technical assistance" may be provided to persons "for the suppression of any nuisance birds when it has been determined that they are defacing or defiling public or private property." Code § 18.2-488 states that "[n]o person shall publicly burn with contempt, mutilate, deface, defile, trample upon, or wear with intent to defile any such flag, standard, color, ensign or shield." The meaning of "defile" in those statutes comports with the dictionary definition to disrespect, dishonor, or make dirty or soil.[5]

Code § 18.2-126(B) specifically excludes from the term "defile" any autopsy or recovery of organs or tissues for transplantation, or any other lawful purpose. The exclusion is consistent with the ordinary meaning of "defile" as disrespecting or desecrating a corpse and inconsistent with interpreting the term as only sexual molestation. If the legislature had intended to limit the meaning of "defile" to only sexual molestation, there would have been no need to include any exception because the required lascivious intent component of sexual molestation would be absent in a procedure performed for a legal purpose. The only logical conclusion from appellant's definition is that one performing an autopsy is exempt from prosecution under the statute even if he sexually molests the corpse. Sexual molestation is not a legitimate purpose.

_____

[5] Conversely, other statutes that employ "defile" relate to specific sexual crimes, see Code §§ 18.2-31(A)(1), 18.2-48, 18.2-49, 18.2-355(2); sex offender registration, see Code § 9.1-902; and sexually violent predators, see Code § 37.2-900.

When construing a statute, we must "assume that the legislature chose, with care, the words it used when it enacted the relevant statute." Miller v. Commonwealth, 64 Va. App. 527, 541 (2015) (quoting Barr v. Town & Country Props., Inc., 240 Va. 292, 295 (1990)). "A statute is not to be construed by singling out a particular phrase; every part is presumed to have some effect and is not to be disregarded unless absolutely necessary." Commonwealth v. Zamani, 256 Va. 391, 395 (1998) (citing VEPCO v. Citizens for Safe Power, 222 Va. 866, 869 (1981); Raven Coal Corp. v. Absher, 153 Va. 332, 335 (1929)). Furthermore, "[t]he plain, obvious, and rational meaning of a statute is to be preferred over any curious, narrow, or strained construction." Meeks v. Commonwealth, 274 Va. 798, 802 (2007) (quoting Zamani, 256 Va. at 395). Statutes should never be construed in a way that leads to absurd results. See Washington v. Commonwealth, 272 Va. 449, 455 (2006); Turner v. Commonwealth, 65 Va. App. 312, 324 (2015).

We find appellant's reliance on Fitzgerald unavailing because the holding was limited to defining "defile" within the context of Code § 18.2-48. Applying that same definition of "defile" as the only meaning of the term as it is used in Code § 18.2-126(B) results in a strained interpretation inconsistent with the ordinary dictionary meaning of the word. Because we do not find appellant's interpretation a reasonable construction of the statute, the rule of lenity does not control. See Blake v. Commonwealth, 288 Va. 375, 386 (2014) (stating that where "the language of a statute permits two reasonable but contradictory constructions, the statutory construction favorable to the accused should be adopted").

Appellant further argues that "defile" in Code § 18.2-126(B) must mean only sexual molestation because Code § 18.2-323.02 proscribes a separate crime for concealing a dead

body.[6]  He asserts that the act of concealing also would comprise the act of defiling, making the statutes duplicative unless Code § 18.2-126(B) is narrowly construed to address only sexual molestation of a corpse.  We find this argument equally unavailing.  Several statutes may apply to a defendant's conduct, and the Commonwealth has the discretion to charge a defendant under any or all that may apply.[7]  See Cole v. Commonwealth, 58 Va. App. 642, 653 (2011) (holding that the decision to prosecute and what charge to file falls within the prosecutor's discretion).

Additionally, an act of concealment is to prevent disclosure.  See Concealment, Black's, supra (defining "concealment," in part, as "[t]he act of preventing disclosure or refraining from disclosing; esp., the injurious or intentional suppression or nondisclosure of facts that one is obliged to reveal; COVER-UP").  Appellant attempted to prevent detection of Jordan's death by telling her family "not to worry" after they reported her missing and assured them that she would return, even though he knew that she was dead and he had left her body in a city park.  Also, appellant told the police who initially investigated Jordan's death that he last saw her on November 15, 2007, when she left the house to buy drugs, but he did not admit that she had died in his bedroom that night.  Thus, concealing a body under Code § 18.2-323.02 may occur without dishonoring or desecrating a corpse, the conduct addressed in Code § 18.2-126(B).

Having determined that "defile" does not mean only sexual molestation for purposes of Code § 18.2-126(B), we now turn to the sufficiency of the evidence.  Appellant dumped Jordan's body in a garbage-strewn and filthy park, leaving it at the mercy of marauding animals that ultimately gnawed off part of her body.  He purposely left her body in an area where harm to the

---

[6] Code § 18.2-323.02 states that "[a]ny person who transports, secretes, conceals or alters a dead body . . . with malicious intent and to prevent detection of an unlawful act or to prevent the detection of the death or the manner or cause of death is guilty of a Class 6 felony."

[7] The Commonwealth charged appellant with violating both Code §§ 18.2-126(B) and 18.2-323.02.  Appellant did not challenge his conviction under Code § 18.2-323.02.

sanctity of the body was foreseeable and, in fact, ultimately caused such severe disfigurement to her body that dental records were needed to identify it. His actions clearly showed disrespect for the corpse. We therefore find the evidence sufficient to sustain appellant's conviction.

CONCLUSION

We hold that the meaning of "defile" in Code 18.2-126(B) is not limited to sexual molestation and includes any action that dishonors or desecrates a corpse by treating it in an offensive manner. We also hold that appellant's disposal of Jordan's body constituted defilement under the statute.

Affirmed and remanded.[8]

---

[8] There appears to be a typographical error in the sentencing order. While it correctly states that appellant was found guilty of involuntary manslaughter and defil[e]ment of a dead body, it sentences him to "3 years for 1st degree murder (indictment #1) and defil[e]ment and 5 years for defilement of a dead body." We remand to the circuit court for a correction of the record. See Code § 8.01-428(B).