COURT OF APPEALS OF VIRGINIA

Present:   Judges Fulton, Lorish and White
Argued at Norfolk, Virginia

NORFOLK DEPARTMENT OF HUMAN SERVICES

                                                    OPINION BY
v.        Record No. 1382-23-1              JUDGE LISA M. LORISH
                                                    AUGUST 20, 2024

JOSHUA GOLDBERG


FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Robert B. Rigney, Judge

Christopher W. Palermo-Re (Office of the Norfolk City Attorney, on
brief), for appellant.

No brief or argument for appellee.

The Norfolk Department of Human Services ("the Department") appeals the decision of

the Circuit Court of the City of Norfolk allowing Joshua Goldberg to access documents related to

an unfounded report of child sexual assault against him under Code § 63.2-1514(D) (the "bad

faith disclosure exception").  The Department argues that Goldberg should not be able to access

the report because the bad faith disclosure exception only covers a report made directly to the

Department by a bad faith actor.  Here, the purported bad faith actor made the complaint to a

mandatory reporter who then relayed the allegations to the Department.  We agree with the

circuit court that the statute permits the disclosure of the records, and so we affirm.

BACKGROUND[1]

Joshua Goldberg ("Goldberg") is married to Dr. Ali Goldberg ("Ali"), and the couple has two young children. A report was made to the Department that Goldberg was sexually abusing their daughter, L.G.[2] The Department investigated and implemented a safety plan that required Ali to supervise all contact between her husband and L.G. L.G. also had to undergo a forensic interview as part of the investigation. Because Goldberg is a member of the U.S. Navy, the Naval Criminal Investigative Services also investigated the report. The Department determined that the accusation against Goldberg was unfounded and closed the investigation.

Goldberg and his wife suspected that Ali's mother, Linda MacKrell, made the report based on MacKrell's long history of interfering with how they raised their children and prior false allegations against Goldberg. They also suspected her because the report contained information Goldberg believed was only known to MacKrell.

Acting on these suspicions, Goldberg petitioned the Circuit Court of the City of Norfolk to release the records of the Department's investigation to him under the bad faith disclosure exception in Code § 63.2-1514(D). The petition outlined the above facts and alleged that Goldberg "believes that the complaint was made by Linda MacKrell, made anonymously by Linda MacKrell, or made by a family member of Linda MacKrell based on false information provided to them by Linda MacKrell." It also alleged that the complaint was made "in bad faith

---

[1] The record in this case was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues appellant has raised. Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." *Levick v. MacDougall*, 294 Va. 283, 288 n.1 (2017). We recite all facts in the light most favorable to Goldberg, the prevailing party below. *Konadu v. Commonwealth*, 79 Va. App. 606, 610 n.1 (2024).

[2] As L.G. is a minor, we abbreviate her name to protect her identity.

and maliciously in order to end the relationship between Mr. Goldberg and his Wife to create a situation where [Ali] would need Ms. MacKrell's assistance with the children and thus be allowed to be integrated in their lives." The petition asked the court to review the documents in camera and determine whether Goldberg satisfied the bad faith disclosure exception.

The court issued a writ of certiorari asking the Department to provide the documents related to the unfounded report of abuse against Goldberg and ordered a hearing on the matter. The Department opposed the petition, making the same argument it now makes on appeal—that the report was made without bad faith by a mandatory reporter and therefore did not qualify under the statute. According to the Department, the allegedly malicious report or complaint must be conveyed to the Department directly by someone acting in bad faith to be eligible for release under Code § 63.2-1514(D); where a malicious or bad faith allegation is made to a mandatory reporter who then innocently communicates that information to the Department, the statute does not permit disclosure. The Department also contended that Goldberg had not met his burden of showing that there existed a "reasonable question of fact as to whether the report or complaint was made in bad faith or with malicious intent."

At the hearing, Goldberg and his wife testified about why they believed that MacKrell was the originator of the report and why she would have made the allegation maliciously or in bad faith. Goldberg asserted that MacKrell had never supported his marriage to her daughter and that before the investigation, "MacKrell had been limited in her interactions with the family due to prior false allegations" against him and the children's nannies, as well as "general interference with" the Goldbergs' parenting. He opined that MacKrell made the report "in order to limit [his] access to his children and make herself needed to care for the children." He added that some of the information reported could only have been known to MacKrell. He also assured the court

- 3 -

that he would take no action to threaten the life or safety of MacKrell and that he has no history of violence in general or with respect to MacKrell specifically.

Ali testified that she too believed that her mother had made the report. She said that, in the past, her mother had "attempted to pay one of their children's nannies to unexpectedly quit providing childcare" and that her mother does not get along with Goldberg. She also testified that her brother had sent her videos that MacKrell had taken of L.G. in which she tried to make L.G. behave "in a way that would support the allegations" made to the Department and that the behavior in the video was abnormal for her daughter. She also said that her brother had "alluded to the idea that their mother had made the complaint."

After hearing this evidence, the circuit court determined that Goldberg had satisfied the requirements of the bad faith disclosure exception and issued a letter opinion explaining its decision to allow Goldberg to access the requested records. The court, while acknowledging the Department's arguments, focused on the legislative intent of the statute, "to provide the records of ill-founded abuse or neglect charges to individuals who have been targeted maliciously or in bad faith." Finding that Goldberg was in the exact situation that the statute was designed to address, the court ruled that Code § 63.2-1514(D) applied and that Goldberg had satisfied the requirements to obtain relief under the statute.

The Department moved to stay the verdict until this appeal could be completed. The court ordered another hearing to consider arguments on the motion to stay and, following the hearing and consideration of the parties' briefs, suspended the execution of its final order allowing Goldberg access to the documents until after this appeal was resolved. The Department signed the order as seen and objected to, outlining the same arguments that it makes in the instant appeal. The Department timely appealed.

ANALYSIS

The Department argues that the circuit court erred in interpreting Code § 63.2-1514(D). A question of statutory interpretation is a pure question of law that we consider de novo. *Conyers v. Martial Arts World of Richmond, Inc.*, 273 Va. 96, 104 (2007). When this Court is asked to interpret a statute, our task "is to ascertain and give effect to legislative intent, as expressed by the language used in the statute." *Verizon Va. LLC v. State Corp. Comm'n*, 302 Va. 467, 477 (2023) (quoting *Cuccinelli v. Rector & Visitors of the Univ. of Va.*, 283 Va. 420, 425 (2012)). "When the language of a statute is unambiguous, we are bound by its plain meaning." *Taylor v. Commonwealth*, 298 Va. 336, 341 (2020) (quoting *Conyers*, 273 Va. at 104). Accordingly, we "apply[] the plain meaning of the words unless they are ambiguous or [doing so] would lead to an absurd result." *Eley v. Commonwealth*, 70 Va. App. 158, 164 (2019) (alterations in original) (quoting *Wright v. Commonwealth*, 278 Va. 754, 759 (2009)). Language is ambiguous if "the text can be understood in more than one way or refers to two or more things simultaneously [or] . . . the language is difficult to comprehend, is of doubtful import, or lacks clearness or definiteness." *Blake v. Commonwealth*, 288 Va. 375, 381 (2014) (first alteration in original) (quoting *Boynton v. Kilgore*, 271 Va. 220, 227 n.8 (2006)). If a court finds that the language of a statute is ambiguous, then it may consider factors other than the text itself, "such as the purpose, reason, and spirit of the law" in determining the statute's meaning. *Eley*, 70 Va. App. at 164.

A. Reports of child abuse generally are kept confidential, but there is a narrow exception to enable a civil remedy for the victim of a bad faith actor.

In general, "[t]he records, information and statistical registries of the Department, local departments and of all child-welfare agencies concerning social services to or on behalf of individuals [are] confidential information." Code § 63.2-104. Therefore, under ordinary circumstances, a person accused of child abuse and neglect cannot gain access to either the

- 5 -

content of the report against them or the identity of the reporter. If the Department investigates a report and finds it unfounded, however, the bad faith disclosure exception provides a limited exception to this rule when the "subject of [the] unfounded report or complaint made pursuant to this chapter" believes the complaint or report was made "in bad faith or with malicious intent," and they can meet certain other statutory requirements. Code § 63.2-1514(D). In such a case, the bad faith disclosure exception requires the subject of the unfounded report to petition the circuit court where the report was made and "set forth the reasons such person believes that such report or complaint was made in bad faith or with malicious intent." *Id.* The circuit court then "shall request" that the local department provide the court with records of the investigation to be viewed in camera. *Id.* The petitioner may also present evidence in support of his petition. *Id.* Only after reviewing this evidence, and after finding both that (1) there is "a reasonable question of fact as to whether the report or complaint was made in bad faith or with malicious intent" and (2) "disclosure of the identity of the complainant would not be likely to endanger the life or safety of the complainant," will the court provide a copy of the investigation records to the petitioner. *Id.*

Another statute, also under Title 63.2 and Chapter 15, requires people occupying certain positions to report to the local department of social services when they learn "in their professional or official capacity" that a child may be suffering abuse or neglect. Code § 63.2-1509(A). Such people are often called "mandatory reporters." *See, e.g.*, *Wolf v. Fauquier Cnty. Bd. of Supervisors*, 555 F.3d 311, 317 (4th Cir. 2009) (referring to those legally required to report findings of abuse or neglect under Code § 63.2-1509 as "mandatory reporters"). If a mandatory reporter fails to file a report "as soon as possible, but not longer than 24 hours after having reason to suspect a reportable offense of child abuse or neglect," then they are subject to a

fine and, in cases involving certain types of sexual abuse, can also be prosecuted for a misdemeanor.  Code § 63.2-1509(D).

    B.  Because the bad faith disclosure exception is ambiguous, the statute's purpose of enabling civil recovery is relevant to our interpretation.

The key question is whether the bad faith disclosure exception applies only to malicious or bad faith reports or complaints made directly to a local department, or whether it also permits disclosure of such a report or complaint made to a mandatory reporter who then conveys the same to the local department.  The statute does not address this directly.  Instead, it begins: "[a]ny person who is the subject of an unfounded report or complaint made pursuant to this chapter who believes that such report or complaint was made in bad faith or with malicious intent may petition the circuit court . . . for the release . . . of the records of the investigation" to the petitioner.  Code § 63.2-1514(D).  The statute does not define "report" or "complaint" or specify whether "report or complaint" refers only to allegations conveyed directly to the Department or also to those conveyed to the Department by way of an intermediary.

Because this statutory language "lacks clearness or definiteness," we look to the purpose or spirit of the statute to help determine its meaning.  *Eley*, 70 Va. App. at 164.  The General Assembly's intent in enacting Code § 63.2-1514(D) was to "create[] a summary procedure to enable a person wrongfully accused of child abuse or neglect to obtain the details of the accusation from the local social services department that investigated the ill-founded charge." *Gloucester Cnty. Dep't of Soc. Servs. v. Kennedy*, 256 Va. 400, 404 (1998).[3]  The statute provides that if the circuit court decides that the investigative records should be released to the

---

[3] Code § 63.2-1514(D) is unambiguous on the question of whether local departments have the right to present evidence at evidentiary hearings under the statute. *Gloucester Cnty. Dep't of Soc. Servs.*, 256 Va. at 404.  In contrast, the statute is ambiguous about whether reports must be made directly to the local department to qualify for release under the bad faith disclosure exception.

petitioner, then they "shall [also] be subject to discovery in any subsequent civil action regarding the making of a complaint or report in bad faith or with malicious intent." Code § 63.2-1514(D). The General Assembly intended for this provision to provide a means for those who have been victims of malicious or bad faith complaints to file a civil suit against the complainant. This provision magnified the existing statute declaring that "[i]n any legal proceeding resulting from the filing of any report or complaint pursuant to this chapter, the physician-patient and spousal privileges shall not apply." Code § 63.2-1519.

When it comes to statutes about reporting child abuse, there are "[h]ard choices" to be made. *Wolf*, 555 F.3d at 323 (interpreting Code § 63.2-1512, the Virginia statute that gives immunity to those who make reports or complaints unless they did so maliciously or in bad faith). To protect children, the General Assembly *encourages* everyone to make good faith reports of suspected abuse or neglect, Code § 63.2-1510, and *requires* certain categories of individuals to do so, Code § 63.2-1509(A). But because of the damage a false report can do to someone wrongfully accused, the General Assembly also protects the subjects of unfounded reports upon a showing of bad faith or malice. Code § 63.2-1514(D).

The provision allowing for the disclosure of documents is key to that tradeoff; indeed, it is one of the very few tools parents possess to fend off false reports that would deprive them of their children and potentially subject them to criminal punishment. This Court has recognized that "[i]n today's society there is no more deplorable badge of infamy a person can wear than that of being a child abuser." *Jackson v. Marshall*, 19 Va. App. 628, 635 (1995) (quoting *Jackson v. W.*, 14 Va. App. 391, 408 (1992)). This is the very reason the General Assembly requires DSS to retain the records of unfounded reports "for an additional period of up to two years" beyond what the statute would otherwise require "if requested in writing by the person who is the subject of such complaint or report." Code § 63.2-1514(B). The "obvious purpose"

of this extra retention requirement "is to allow an accused abuser to prove to others that the charge was without merit." *Jackson*, 19 Va. App. at 636.

        C.  The bad faith disclosure exception permits disclosure of a report relayed through a mandatory reporter.

Goldberg was plainly the subject of a report or complaint of child abuse made under Chapter 15 of Title 63.2. And he credibly alleged that the report that he had abused his daughter was made in bad faith and with malicious intent.[4] The Department has not alleged below, or on appeal, that the mandatory reporter who relayed the report to the Department did anything other than pass on information she received from a third party. In other words, there is no evidence or argument here that the mandatory reporter had any other independent basis to suspect abuse or neglect. The narrow interpretation advanced by the Department asks us to read words into the statute that simply are not there. The statute does not refer to "[a]ny person who is the subject of an unfounded report or complaint made *directly to the Department* and pursuant to this chapter." Consistent with the statute's purpose, we find that Code § 63.2-1514(D) covers bad faith disclosures made to mandatory reporters.

The Department's primary argument that the disclosure provision should be cabined to direct reports is based on the language of other statutes within Title 63.2. First, the Department contends that the phrase "report or complaint" should be read in pari materia[5] with other statutes

---

[4] The bad faith and malicious intent requirements ensure that the statute cannot be stretched to cover an allegation made to an intermediary without intending that the intermediary relay the same to the Department.

[5] Under the doctrine of in pari materia, "statutes are considered as if they constituted but one act, so that sections of one act may be considered as though they were parts of the other act, as far as this can reasonably be done." *Morgan v. Commonwealth*, 301 Va. 476, 481 (2022) (quoting *Prillaman v. Commonwealth*, 199 Va. 401, 405 (1957)). Furthermore,

        where legislation dealing with a particular subject consists of a
        system of related general provisions indicative of a settled policy,

in the same title that contain that phrase. In general, "statutes may be considered as *in pari materia* when they relate to the same person or thing, the same class of persons or things or to the same subject or to closely connected subjects or objects." *Lucy v. Cnty. of Albemarle*, 258 Va. 118, 129 (1999) (quoting *Prillaman v. Commonwealth*, 199 Va. 401, 405 (1957)). Statutes that "have the same general or common purpose or are parts of the same general plan are also ordinarily considered as *in pari materia*." *Id.* (quoting *Prillaman*, 199 Va. at 405).

It is true that Title 63.2 contains several other references to a "report or complaint," but it does so only to set out the general framework for how the Department investigates such reports and complaints. *See, e.g.*, Code §§ 63.2-1505, -1508, -1517. The Department emphasizes two of these references—first, Code § 63.2-1509(A), which states that mandatory reporters "who, in their professional or official capacity, have reason to suspect that a child is an abused or neglected child, shall report the matter . . . *to the local department*," and second, Code § 63.2-1510, which states that "[a]ny person who suspects that a child is an abused or neglected child may make a complaint concerning such child . . . *to the local department*." (Emphases added). That the General Assembly specified that reports could be made to the local social services departments in these other statutes is evidence, the Department argues, that an allegation only constitutes a "complaint or report" for purposes of the disclosure statute if it was made directly to "the local department."

---

new enactments of a fragmentary nature on that subject are to be taken as intended to fit into the existing system and to be carried into effect conformably to it, and they should be so construed as to harmonize the general tenor or purport of the system and make the scheme consistent in all its parts and uniform in its operation, unless a different purpose is shown plainly or with irresistible clearness.

*Id.* (quoting *Prillaman*, 199 Va. at 405).

We are not persuaded that the reference to local departments in these other provisions of the Code requires us to read in a requirement that only reports made directly to local departments are subject to the bad faith disclosure exception. It is undisputed that "[t]he local department shall be the public agency responsible for receiving and responding to complaints and reports." Code § 63.2-1503(A). So it comes as no surprise that mandatory reporters should make those reports to the local department, Code § 63.2-1509, and that other individuals with a suspicion "may" make a complaint to the local department, Code § 63.2-1510. Collectively, these statutes set up the structure for receiving and investigating reports or complaints of potential abuse. This general structure does not suggest that the General Assembly intended for victims of unfounded reports of abuse to be prohibited from obtaining records of the investigation of such reports merely because the report made in bad faith was first conveyed to a mandatory reporter rather than being made directly to a local department.

The Department also argues that we should read Code § 63.2-1513, the statute subjecting false reporters to potential criminal liability, in pari materia with Code § 63.2-1514. That statute states that a person who "makes *or causes to be made* a report of child abuse or neglect . . . that he knows to be false" is guilty of the Class 1 misdemeanor of knowingly making a false report. Code § 63.2-1513(A) (emphasis added). Because the criminal liability statute specifically covers indirect reports, the Department urges us to find that the absence of such language in the disclosure statute means that only direct reports are covered. This interpretive principle, often recognized as the "negative-implication canon," presumes that "when the General Assembly has used specific language in one instance but omits that language or uses different language when addressing a similar subject elsewhere in the Code . . . the difference in the choice of language was intentional." *Zinone v. Lee's Crossing Homeowners Ass'n*, 282 Va. 330, 337 (2011). "Courts must rely on this presumption 'because under these circumstances, it is evident that the

- 11 -

General Assembly "knows how" to include such language in a statute to achieve an intended objective,' and therefore, omission of such language in another statute 'represents an unambiguous manifestation of a contrary intention.'" *Morgan v. Commonwealth*, 301 Va. 476, 482 (2022) (quoting *Brown v. Commonwealth*, 284 Va. 538, 545 (2012)). The Department argues that this interpretative canon compels the conclusion that the General Assembly knew how to cover indirect reports in a statute and chose not to do so in drafting Code § 63.2-1514(D).

At first blush, this argument has some force, but its persuasive power is undercut by the different purposes of the two statutes. As discussed above, the bad faith disclosure exception, first enacted in 1988, enables the subjects of such complaints to bring civil suits in an effort to clear their names in the public view and to receive recompense. This provision now falls within Article 3 of the chapter, dealing with records, and the Department's obligations for retaining and releasing the same. The criminal liability statute, added later in 1996, falls under Article 2, covering the making of complaints. It immediately follows Code § 63.2-1512, which grants reporters and complainants "immun[ity] from any civil or criminal liability . . . unless it is proven that such person acted in bath faith or with malicious intent." As Code § 63.2-1513 then makes clear, criminal liability can attach to anyone "fourteen years of age or older who makes or causes to be made a report of child abuse or neglect . . . that he knows to be false."

The negative implication canon, like all canons of statutory interpretation, is an interpretative tool that may aid courts in determining the legislative intent behind an ambiguous statute. But the persuasiveness of silent implication is context-dependent. "Virtually all the authorities who discuss the negative-implication canon emphasize that it must be applied with great caution, since its application depends so much on context." *City of Alexandria v. State Corp. Comm'n*, 296 Va. 79, 100 n.7 (2018) (quoting Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 107 (2012)). "[T]here are circumstances in which 'the

legislature [does] not in fact intend that its express mention of one thing should operate as an exclusion of all others.'" *Id.* (second alteration in original) (quoting Henry Campbell Black, Handbook on the Construction and Interpretation of the Laws § 72, at 220 (2d ed. 1911)). The context here is that one statute creates criminal liability, and the other provides rules about when records can be disclosed, which enables a possible civil remedy to a victim of a bad faith disclosure. In this circumstance, clear expressions of legislative purpose overcome any implication from legislative silence.

What is more, the negative implication for which the Department advocates clashes with another part of the same statutory framework. Under Code § 63.2-1526, the subject of a *founded* allegation of child abuse has certain rights. One such right is that the local department, upon written request "shall provide the appellant all information used in making its determination." Code § 63.2-1526(A). While the "[d]isclosure of the reporter's name or information which may endanger the well-being of a child shall not be released," the statute requires the local department to release the "identity of a collateral witness or any other person" unless "disclosure may endanger his life or safety." *Id.* Thus, were we to adopt the Department's limited view of the bad faith disclosure exception, someone found to have actually abused a child would have greater rights to information than someone cleared of suspicion of abuse. Nothing about the legislative purpose or the statutory framework suggests that the General Assembly intended to extend more protection to individuals who were found to have perpetrated abuse than to those who had been falsely accused.

Interpreting the disclosure statute not to allow the release of investigative records simply because the malicious accuser complained through an intermediary would frustrate the statute's purpose, preventing the victim of such a report from receiving civil relief. The victim would be unable to seek justice for the enormous emotional, reputational, and financial harm that comes

- 13 -

from being accused of child abuse or neglect and separated from one's children during the investigation. As the Department acknowledged at oral argument, interpreting the statute to apply only to complaints or reports made directly to the Department would exclude not only reports to a mandatory reporter, but also reports made to law enforcement who then pass along that information to the Department. Again, we do not think the General Assembly intended to allow a giant loophole for bad faith actors to avoid civil liability.

Finally, we note that our interpretation of the bad faith disclosure exception still respects the other goals of the statute. It still encourages making every legitimate complaint to protect children. This interpretation also furthers Code § 63.2-1514(D)'s goal of protecting bad faith actors from physical harm—even where there is indisputable evidence of bad faith, a court cannot release the information if the disclosure would "be likely to endanger the life or safety of the complainant."

"[T]he plain, obvious, and rational meaning of a statute is always to be preferred to any curious, narrow, or strained construction." *Turner v. Commonwealth*, 226 Va. 456, 459 (1983). The court below correctly found that the Department's interpretation of Code § 63.2-1514(D) would both add additional language to the statute and hamstring the purpose of the bad faith disclosure exception—to allow those who have been the victim of a report made maliciously or in bad faith to recover for the loss they have suffered. We therefore find that the circuit court correctly interpreted this section to include reports made by mandatory reporters that originated from another source who acted maliciously or in bad faith.[6]

---

[6] The Department also assigned error to the circuit court's judgment because, in its view, Goldberg failed to demonstrate that there was "a reasonable question of fact as to whether the report or complaint was made in bad faith or with malicious intent," a prerequisite for disclosure under Code § 63.2-1514(D). However, the Department failed to provide any argument to support its assignment of error in its brief, a significant violation of Rule 5A:20(e), which

CONCLUSION

For these reasons, we affirm the circuit court's judgment.

*Affirmed.*

---

requires an opening brief to contain the argument, principles of law, and authorities relating to each assignment of error. We therefore find the second assignment of error to be waived and do not consider it. *See Bartley v. Commonwealth*, 67 Va. App. 740, 744 (2017) ("'[W]hen a party's "failure to strictly adhere to the requirements of Rule 5A:20(e)" is significant,' this Court may treat the question as waived." (quoting *Parks v. Parks*, 52 Va. App. 663, 664 (2008))).