PRESENT:  All the Justices

ERIC LISANN

v.  Record No. 230718

ELIZABETH LISANN

OPINION BY
JUSTICE D. ARTHUR KELSEY
MAY 8, 2025

FROM THE COURT OF APPEALS OF VIRGINIA

The Court of Appeals in this case held that a divorce may be granted pursuant to Code
§ 20-91(A)(9) without either party demonstrating an intent to permanently live separate and apart
throughout the statutory period of separation.  *See Lisann v. Lisann*, 78 Va. App. 225, 236
(2023).  To satisfy the statute, the Court of Appeals reasoned, the intent to permanently separate
need only exist at the very beginning of the separation period.  We disagree.

The intent to permanently separate must predominate throughout the statutory period.
Such intent can be factually inferred, but it cannot be deemed legally irrelevant.  Though we
reject the reasoning of the Court of Appeals, we affirm the trial court's judgment on this issue
because the record supports the presumption that the trial court used the correct standard when
reviewing the evidence at trial.

I.

After eight days of trial, the wife prevailed on the question whether she was entitled to a
divorce pursuant to Code § 20-91(A)(9).  In the absence of express factual findings by the trial
court to the contrary, we view all conflicts in the evidence in a manner favorable to her as the
prevailing party.  *See Purce v. Patterson*, 275 Va. 190, 194 (2008).

So viewed, the evidence shows that the parties married in 1993, and during the marriage,
they had two children.  Husband and wife first lived in a condominium that the wife had
purchased prior to the marriage, and shortly after the marriage, the wife refinanced the mortgage

on the property. In 1995, just prior to the birth of their first child, the parties moved out of the condominium and began renting it out.

In 2000, the parties moved to Paris, France, after the wife had accepted a new position with her employer. The husband had family in France, and although he had also applied for a job with his employer in France, he did not receive the position. The husband had left his job as a federal prosecutor when the family moved, and he did not maintain consistent full-time employment in the years that they lived in France. In August 2007, the wife and the parties' younger child returned to the United States when the wife's job required her to return. The husband and the parties' older child remained in Paris so that the child could complete school through the end of the year. Even after the older child had returned to the United States at the end of 2007, the husband remained in Paris until August 2008.

After his return to the United States in 2008, the husband did not resume full-time employment, and he frequently returned to France for months at a time to work part-time jobs there. From March 2009 until July 2014, the parties resided at a rental home in McLean, Virginia. In 2012, to reduce the family's monthly living expenses, the wife sold the condominium that she had purchased prior to the marriage and had been renting out since 1995, and she purchased a house in Vienna, Virginia ("Daniel Lewis property"). Because the family could not initially agree to live in the house that the wife had purchased, the wife rented it out, and the family continued living in the McLean rental home until 2014.

On July 14, 2014, the parties moved to separate residences with the wife and the parties' minor child moving to the Daniel Lewis property and with the husband moving to a rental apartment. Wife testified that she intended to permanently separate from and divorce her husband when she had moved to the Daniel Lewis property and that intent has continued without

any cohabitation and without any interruption since July 14, 2014. Between July 14, 2014, and December 24, 2018, the parties participated together in activities with their children. The parties also traveled together on vacations and to family functions during this period with either one or both children. The parties frequently ate meals together, occasionally stayed overnight at each other's homes, and had a key to the other's home. The parties shared a room and a bed when they stayed overnight, but they did not have sexual relations. The parties also celebrated birthdays, holidays, and even anniversaries between 2014 and 2018. The wife eventually began a relationship with another man and told the husband about it in December 2018. The last night the parties spent together in the same residence was December 24, 2018.

The wife filed for divorce in October 2019, alleging the ground of having lived separate and apart since July 14, 2014. In the divorce complaint, the wife alleged that "[a]t least one of the parties has intended to live separate and apart for at least one year and that their *intent has remained constant for at least one year*." R. at 2 (emphasis added). The husband filed a counterclaim for divorce, alleging the grounds of adultery and desertion and that the parties' separation date was December 24, 2018.

Over the course of the eight-day trial, the parties disputed their separation date based upon whether the intent to permanently live separate and apart need only be demonstrated to exist on the first day of separation or rather to predominate throughout the statutory period.[1] The

---

[1] The parties not only disputed the correct legal standard for satisfying the intent requirement for separation, but they also disputed numerous legally material facts that were relevant to the duration of the parties' separation and the legal character of the parties' intent to permanently live separate and apart. As an example, the husband testified that he had lived with the wife at the Daniel Lewis property approximately three to four nights a week, R. at 1572-73, but the wife testified that while the husband had stayed in her house "on more than one occasion," it was not "the majority of nights," "the majority of weekend nights," or "the majority of holiday evenings," *id.* at 827. The parties also disputed whether they had held themselves out to family and friends as living separate and apart. Under the legal standard for intent adopted by

3

husband argued that "[t]he intent element is supposed to be continuous and without interruption, just as the physical separation is supposed to be continuous and without interruption." *Id.* at 1023. He acknowledged that mere participation in "counseling" or discussion of the possibility of "reconciliation" would not by itself negate the continuing presence of an intent to permanently separate "because they haven't abandoned the intention to remain separate." *Id.* at 1024.[2] But an unequivocal disavowal, in word or deed, of such intent would.

In response, the wife relied upon *Hooker v. Hooker*, 215 Va. 415 (1975) (per curiam), to argue that the intention to permanently separate "must be shown to have been present at the beginning of the uninterrupted [statutory period] . . . of living separate and apart without any cohabitation" and that "this intention is only at the beginning." R. at 1027-28. The presence or absence of a permanent intent to separate after the first day of separation, she argued, need not be considered because it was legally irrelevant under *Hooker*'s interpretation of Code § 20-91(A)(9).

The trial court engaged both parties in fleshing out their arguments regarding the intent requirement at multiple points during the trial. The final divorce decree, however, did not make any specific findings regarding intent or the duration of the intent. The decree merely stated that "[t]he parties have lived separate and apart without any cohabitation and without interruption for

---

the Court of Appeals, these factual disputes were mostly irrelevant because they speak to whether an intent to permanently live separate and apart existed throughout the statutory period of separation.

[2] Conflating the duration of intent and its intrinsic character, the concurrence states that it "do[es] not find support for this position in the record" because "Mr. Lisann consistently argued that the intent must be *continuous* throughout the statutory period, not simply predominate." *See post* at 20 note 2. The husband's argument, however, directly addressed the character and strength of the required intent as well as its duration.

4

a period in excess of one year; to wit: since on or about July 14, 2014," and that "[t]here is no hope or possibility of reconciliation between the parties." *Id.* at 507.

The husband appealed to the Court of Appeals, contending that the trial court erred in finding that the parties separated on July 14, 2014, not December 24, 2018, because neither party had the intention to permanently live separate and apart for the statutory period until the latter date. The Court of Appeals designated the issue as one of "first impression," addressing "whether a party who intends to separate permanently at the commencement of the statutory separation period for a no-fault divorce must — to preserve the separation date — *continuously maintain* the intent to separate permanently throughout the separation period." *Lisann*, 78 Va. App. at 230-31 (emphasis in original).

Resolving that novel question, the Court of Appeals held that "a party seeking a no-fault divorce under Code § 20-91(A)(9) is not required to show that either party continuously maintained, throughout the statutory period, an intent to separate permanently." *Id.* at 236. Instead, "[t]he statutory intent requirement under Code § 20-91(A)(9) is satisfied when, at the commencement of the statutory period, a party has the intent to separate permanently." *Id.* The Court of Appeals affirmed the trial court's ruling that the parties' separation date was July 14, 2014. Because the requisite intent existed on that first day of the statutory period, the Court of Appeals reasoned, the wife had satisfied her burden of proof.

## II.

On appeal to us, the husband argues that the Court of Appeals erred in holding that intent only mattered at the very beginning of the statutory period of separation and in affirming the trial court's divorce decree on this basis. We generally agree with the husband's legal reasoning but not with the remedy he seeks.

5

## A.

The traditional view is that one of the spouses should have the intent to permanently live separate and apart (not just the physical condition of doing so) throughout the prescribed statutory period. To be sure, this intent must exist at the time of the initial separation date, *see Hooker*, 215 Va. at 417,[3] but that has never been enough. "To qualify, the separation must be final and intentional, and it must have that character for the entire time prescribed by the statute." Homer H. Clark, Jr. & Sanford N. Katz, The Law of Domestic Relations in the United States 578 (3d ed. 2021) (finding this principle implicit in the holding of *Hooker*, 215 Va. at 415).

Virginia lawyers have long held this view. In a report to the General Assembly in 1997, the Family Law Section of the Virginia State Bar recognized that Code § 20-107.1(G) required "both separation and the intent on the part of one of the parties that the separation be permanent," which "conforms to the requirement for a 'no fault' divorce that at least one of the parties *ha[s] the intent that the separation be permanent throughout the applicable statutory period*." Family L. Section of the Va. State Bar, *Rehabilitative Alimony and the Reservation of Spousal Support in Divorce Proceedings*, House Doc. No. 55, at 13 (1997) (emphasis added). Mirroring this perspective, a plethora of family-law-practice handbooks in Virginia have recognized this principle in sample complaints for divorce.[4]

---

[3] That date can occur during an otherwise impermanent period of physical separation as in the case of a spouse who is temporarily away from the marital home but later forms and expressly communicates an intent to permanently live separate and apart. *See, e.g.*, *Hooker*, 215 Va. at 416-17 (observing that the separation period necessary for filing for divorce did not begin until the husband had expressed an intent to separate permanently over a year and a half after he had moved overseas). *See generally* John E. Byrnes & Margaret F. Brinig, Virginia Domestic Relations Handbook § 19.10, at 19-22 (2025 ed.).

[4] *See, e.g.*, 1 Julia S. Savage, Virginia Family Law: A Systematic Approach 203 (10th ed. 2024) (suggesting language for a divorce complaint based on separation for one year by stating that "[p]laintiff had the intention to remain permanently separated from defendant since the commencement of the separation"); 1 Richard D. Balnave, Virginia Family Law: A Systematic

We recognize that the very concept of intent has an abstract quality, making a court's determination of intent heavily reliant on the factual context in which it is examined. That truism can be validated by the cascade of definitions of intent found in legal dictionaries and a host of judicial opinions. In the complex context of a divorce, however, the traditional view of intent understandably focuses on the predominating intent during the statutory period of separation and does not fixate on episodic or transitory expressions of doubt or indecision. Given the anfractuous nature of a dissolving marriage, a predominating intent can be inferred even when accompanied by mixed motives or mixed signals.[5]

Of the many linguistic variations of intent, we believe the best definitional fit in this context is to view the phrase "with intent to" as focusing on "the chief or dominant intent, any others being subordinate or incidental." Black's Law Dictionary 963 (12th ed. 2024); *see also* John W. Salmond, Jurisprudence § 135, at 419 (1902). In this way, the process for a no-fault, separation divorce tracks its fault-based predecessor. As Dean Phelps colorfully put the point:

> [T]he return of [the deserting spouse] to the home of the
> abandoned spouse, and remaining a brief period of time without
> any intention of permanently resuming matrimonial cohabitation,

Approach 189 (5th ed. 2014) (same); Byrnes & Brinig, *supra* note 3, Form 1, at App-5 (suggesting language for a divorce complaint based on separation for 12 months by stating that "[p]laintiff (defendant) had the intention to remain permanently separated from defendant (plaintiff) since [date]"); Brian M. Hirsch & Danielle V. Poliner, Virginia Family Law Trial Handbook: Pleadings, Evidence, and Strategies 39 (2d ed. 2021) (suggesting language for a divorce complaint based on separation by stating that the "parties separated with it being Plaintiff's intent to live separate and apart permanently, and Plaintiff has maintained such intent since that date").

[5] The concurrence suggests that the traditional view "raises practical application concerns" because it would cause a party to "be disinclined to attempt reconciliation for fear that it would be interpreted as a change in their intent." *See post* at 33. Unsuccessful attempts at reconciliation, however, are not the same as reconciliation. Nor are they necessarily disavowals of an intent to permanently separate. Any effort to blur these conceptual boundaries will be stymied by the predominating-intent standard, which places little or no weight on episodic or transitory expressions of doubt or indecision and permits a finding of the requisite intent even when accompanied by mixed motives or mixed signals.

7

is like a ship putting into a harbor to avoid distress in a storm (a temporary expedient), and such act does not stop the running of the original desertion, which will, after one year, ripen into a ground for divorce.

Arthur Warren Phelps, Divorce and Alimony in Virginia and West Virginia with Forms § 9-7, at 76-77 (2d ed. 1963).

### B.

Describing this case as presenting a "matter of first impression," *Lisann*, 78 Va. App. at 236, the Court of Appeals took a different tack. The intent to permanently separate, the Court of Appeals held, need only exist at the very beginning of the separation period. Under this approach, a spouse could leave the marital home on Day 1 while expressing a genuine intent to permanently separate, openly deny that intent on Day 2, continue to disavow that intent indefinitely, and still obtain a no-fault divorce after the required statutory period elapses — so long as (i) the Day-1 intent was truly genuine, and (ii) the Day-2 change of heart never ripened into an express reconciliation. Nothing in the statutory text or its generally understood meaning supports this counterintuitive thesis. As one experienced commentator[6] has opined, this new view "likely represents a seismic shift" in how Virginia lawyers advise clients on these issues. Brian M. Hirsch, *Cases of the Quarter*, Va. Fam. L.Q., Fall 2023, at 9, 9; *see supra* at 6 and note 4.

The Court of Appeals believed its holding was presaged by our decision in *Hooker*. We agree that *Hooker* deserves careful attention, but we do not agree that it can bear the weight of the Day-1 thesis adopted by the Court of Appeals. The per curiam opinion in *Hooker* involved a husband who had worked and lived in Vietnam for two years while his wife had remained in the

---

[6] *See generally* Hirsch & Poliner, *supra* note 4.

8

United States.  At the end of the two-year period, he filed for a no-fault divorce claiming that he and his wife had lived "separate and apart" for the mandatory (at that time) two-year statutory term.  *Hooker*, 215 Va. at 416.  We held "that the words 'lived separate and apart' in Code § 20-91(9) mean more than mere physical separation."  *Id.* at 417.  The phrase requires proof of "an intention on the part of at least one of the parties to live separate and apart permanently, and that this intention must be shown to have been present at the beginning of the uninterrupted [statutory] period of living separate and apart without any cohabitation."  *Id.*

Nothing in *Hooker* implied, much less expressly held, that the requirement of intent on Day 1 evaporates on Day 2.  To the contrary, *Hooker* emphasized that the husband "concede[d]" that no "such intent" existed either at the beginning of the statutory period (August 1970) or at any time for the *20 months thereafter* (May 1972).  *Id.* at 416.  It was for this reason that we held that his divorce complaint, filed in November 1972, did not satisfy former Code § 20-91(9) (now Code § 20-91(A)(9)).  *Id.* at 417.

The last line of the *Hooker* opinion reinforces this point by stating that the husband "having failed to prove an intention to terminate the marriage *before 1972*, was not entitled under the statute to a divorce in November, 1972, based upon mere separation, without cohabitation and without interruption, that commenced in August, 1970."  *Id.* (emphasis added).  In short, the husband's intent to permanently separate first arose in May 1972 (and was never retracted[7]), and thus his divorce filing in November 1972 was premature.  While not a model of clarity, *Hooker* does not either expressly or implicitly endorse the Day-1 thesis adopted by the Court of

---

[7] *See* Appellant's Br. at 5, *Hooker v. Hooker*, 215 Va. 415 (1975) (No. 740251) ("Admittedly, as the Chancellor states, there is no express intent on the part of either Mr. or Mrs. Hooker to begin a two year period of separation for purposes of obtaining a divorce, beginning in August, 1970.").

9

Appeals.[8]  If anything, as Professors Clark and Katz suggest, *Hooker* implicitly refutes this thesis.  *See* Clark & Katz, *supra*, at 578.

C.

Rather than extrapolate beyond the holding of *Hooker*, we believe the ambiguous text of Code § 20-91(A)(9) should be read in harmony with the unambiguous text of Code § 20-106. The latter statute authorizes the use of affidavits and depositions (in lieu of in-court testimony) in support of a complaint seeking a no-fault, separation divorce pursuant to Code § 20-91(A)(9). This efficient option is available under Code § 20-106(A) only when the parties agree on all disputable issues or when a defending party is in default.  Code § 20-106(B) further specifies the requirements for such a trimmed-down process.  One requirement is that the complainant's sworn "affidavit shall . . . [a]ffirm that the parties *have lived separate and apart*, continuously, without interruption and without cohabitation, *and with the intent to remain separate and apart permanently, for the statutory period* required by subdivision A(9) of § 20-91."  *See* Code § 20-106(B)(5) (emphases added).  The present-perfect verb tense "have lived" requires the intent to remain separate and apart permanently to predominate during the entire "statutory period." *Id.*[9]

---

[8] While conceding that its ruling addressed a "matter of first impression," *Lisann*, 78 Va. App. at 236, the Court of Appeals panel found support for its ruling in *Andrews v. Creacey*, 56 Va. App. 606 (2010).  We agree that *Andrews* did not bind the panel deciding *Lisann* under the "interpanel accord" doctrine, *see Butcher v. Commonwealth*, 298 Va. 392, 397 n.6 (2020), but we disagree that *Andrews* provides any persuasive support for the Day-1 thesis.  The Court of Appeals panel in *Andrews* noted that they were "aware of no evidence that husband changed his mind or abandoned his intent to separate," implying that intent is relevant throughout the statutory period of separation. *Andrews*, 56 Va. App. at 623; *see also* Byrnes & Brinig, *supra* note 3, § 19.10, at 19-22 ("It did not matter whether the husband remained competent during the one-year period, in the absence of any evidence that he changed his mind or abandoned his intent to divorce.").

[9] As Bryan Garner has explained, a present-perfect verb tense consists of the word "have" and a past participle and must have one of two qualities to be appropriate: "indefiniteness of past time or a continuation to the present."  Bryan A. Garner, Garner's Modern American Usage 779 (2003).  While the first quality "represents an action as having been completed at some indefinite

Not only does the present-perfect verb tense inherently indicate a predominating intent throughout the statutory period, but also the syntactical structure of Code § 20-106(B)(5) indicates that the prepositional phrase "for the statutory period" modifies "with the intent to remain separate and apart permanently."[10]

The Virginia Circuit Court Civil Benchbook follows this interpretation by directing circuit courts to confirm the initial date of any "intent to have the separation be permanent" and to verify that such "intention continued through the present." Virginia Benchbook Comm., Virginia Civil Benchbook for Judges and Lawyers § App.27, at A-73 (2024-2025 ed.) (suggested questionnaire); *see also id.* § 7.07[7][b][v], at 7-59 to -60. The reason for such confirmation is

_____

time in the past," the second quality "indicates that an action continues to the present." *Id.* Given the fact that the statute contains a defined statutory period of separation required to obtain a divorce, the more appropriate interpretation of the present-perfect verb "have lived" in this context indicates "a continuation to the present," *id.*; *see, e.g.*, *Williams v. Augusta Cnty. Sch. Bd.*, 248 Va. 124, 128 (1994) (noting that the "present perfect tense . . . denotes an action beginning in the past and continuing to the present"). Furthermore, the prepositional phrase "with the intent to remain separate and apart permanently" functions as an adverb modifying the present-perfect verb phrase "have lived" in Code § 20-106(B)(5) by answering how the parties have lived from a point in the past that "continues to the present," Garner, *supra*, at 779.

[10] The Court of Appeals contends that everything that follows "have lived separate and apart" functions as independent conditions qualifying "have lived separate and apart" with "no condition qualif[ying] another condition." *See Lisann*, 78 Va. App. at 242-43. The lack of a coordinating conjunction before the last condition ("for the statutory period"), however, belies the assertion by the Court of Appeals that the conditions are of equal status. Instead, a mere comma separates the prepositional phrase "for the statutory period" from the preceding list of prepositional phrases — "without interruption *and* without cohabitation, *and* with the intent to remain separate and apart permanently, for the statutory period required by subdivision A(9) of § 20-91," Code § 20-106(B)(5) (emphases added). The most plausible reading of the omission of a coordinating conjunction, along with the comma preceding "for the statutory period," is that the prepositional phrase "for the statutory period" is functioning as an adverb modifying the entire series of equal prepositional phrases (joined by coordinating conjunctions) that came before it by answering how long must there be no interruption, no cohabitation, and intent to remain separate and apart permanently. This reading parallels the reasoning of the series-qualifier canon that "is highly sensitive to context." *See generally* Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 150 (2012).

that "divorce intention must be for a period of at least one year prior to the filing of the Complaint" pursuant to Code § 20-106(B). *Id.* § App.27, at A-73.[11]

Virginia jurisprudence adheres to the "cardinal rule of construction," *Prillaman v. Commonwealth*, 199 Va. 401, 406 (1957) (citation omitted), that a "statute should be construed, where possible, with a view toward harmonizing it with other statutes," *Blue v. Virginia State Bar ex rel. First Dist. Comm.*, 222 Va. 357, 359 (1981). "Several acts in pari materia, and relating to the same subject are to be taken together, and compared in the construction of them, because they are considered as having one object in view, and as acting upon one system." 1 James Kent, Commentaries on American Law 433 (1826); *see also* Earl T. Crawford, The Construction of Statutes 433-34 (1940). This canon applies to different statutes "passed at different times," *Prillaman*, 199 Va. at 406 (citation omitted), just as it would to different statutes enacted at the same time.

The clarity of Code § 20-106(B)(5) ameliorates the ambiguity of Code § 20-91(A)(9). Bear in mind that Code § 20-91(A)(9) says not a word about the "intent" of the separating parties. This textual silence leaves us with three possible responses: (i) no intent is required, (ii) intent is required but only on Day 1, or (iii) intent is required and must predominate throughout the statutory period. The first response is a nonstarter. As *Hooker* held, intent is implied. *See Hooker*, 215 Va. at 417. The debate in the present case is between the second and

---

[11] The trial court in the present case has posted on its website guidance for pro se parties that correctly incorporates these principles in its form pleadings. *See* Fairfax Bar Ass'n, Pro Se Divorce Brochure 20, 24 (Aug. 2023), https://www.fairfaxcounty.gov/circuit/sites/circuit/files/Assets/Documents/PDF/pro-se-divorce-procedures-brochure.pdf (requiring parties using Code § 20-106's summary procedures to seek a divorce pursuant to Code § 20-91(A)(9) to identify the date one of the parties "formed the intent to remain permanently separate and apart" and to affirm that "the intent to remain separate and apart has continued to [the] date" the complaint was filed).

third responses.  The question is which of the two arguable hypotheses is the most reasonable interpretation of the statute.

The more reasonable hypothesis is that the legislature expressly stated in Code § 20-106(B)(5) what was clearly implied in Code § 20-91(A)(9).  As noted earlier, the traditional view has always been that the intent to permanently separate must predominate throughout the "entire time prescribed by the statute," Clark & Katz, *supra*, at 578, which explains why the Day-1 thesis adopted by the Court of Appeals struck some as "a seismic shift" in legal doctrine, Hirsch, *supra*, at 9.[12]

The less reasonable hypothesis is that the legislature was unaware of the traditional view and intended to make uncontested divorces harder (to be sure, much harder) to prove than contested divorces.  That is highly unlikely.  Code § 20-106 was not intended to substantively change the legal standard for obtaining no-fault, separation divorces.  It merely changed the procedure from one requiring live testimony to one relying solely on affidavits and depositions.  The point of Code § 20-106 was to make it easier — not harder — to obtain an uncontested, no-fault divorce.  It would make no sense to require *uncontested* divorce cases to hurdle a demonstrably higher burden of proof (predominant intent of permanent separation throughout the entire statutory term) than that required in *contested* divorces (intent of permanent separation only on Day 1).

### D.

Our concurring colleagues offer several criticisms of our reasoning.  The two major themes appear early in the concurrence.  The first challenges the "predominating intent" concept

---

[12] Our concurring colleagues are "somewhat confus[ed]" about our analysis, particularly "the question [that] remains: 'predominating' for how long?" *Post* at 19-20.  The answer is quite simple:  The statutory period under Code § 20-91(A)(9)(a) is one year — that's how long.

as having "no support in the words used by the legislature, the rules of statutory construction, or the historical backdrop of the two relevant statutes." *Post* at 20. The second theme claims that this variation of the intent concept "was not argued by either party." *Post* at 20. We will offer a brief rejoinder to both.

Beginning with the opening paragraph and continuing to the end of the opinion, the concurrence conflates the *durational* nature of intent (how long it must exist) with the legal *character* of intent (how strong it is relative to other mental states). *See, e.g.*, *post* at 20 note 2, 26-27, 28 note 8.[13] These concepts are conceptually and definitionally distinct. The principal issue in this case is the durational requirement for the intent to permanently live separate and apart. Does it matter that the required intent existed only on the first day but not throughout the statutory period? Under the novel Day-1 thesis, adopted by the concurrence, the answer is no. Under the traditional view, which we recognize, the answer is yes.

Given our answer to the main question, we must then address its application to this case. Beginning on Day 1 and throughout Year 1, did the required intent exist in this case? The parties hotly dispute this issue.[14] It cannot be competently answered without first discerning the legal

---

[13] The concurrence suggests that we are unaware that "continuous and predominating are not synonymous." *Post* at 26. But we are aware, indeed we are insisting, that they are different. The "continuous" concept relates to the durational nature of intent, while the "predominating" concept relates to the legal character of intent.

[14] Throughout the eight days of trial, the parties vigorously contested each other's view of the relative strength and weakness of wife's intent to live permanently separate and apart at all stages of the separation period. *See, e.g.*, R. at 2694 (arguing that wife "did not act with the intent to remain separated from [the husband]" and that "[s]he did not remain separated from him"); *id.* at 1166 (testifying that after July 14, 2014, there never was "a time when [wife] intended that [she] and Mr. Lisann would get back together"); Appellant's Br. at 24 (arguing that "the record clearly establishes that the wife did not maintain her intent" and that "[t]he actions and wishes the wife herself conceded to on the stand make clear that she could not possibly have maintained that intent"); Appellee's Br. at 27 ("The overwhelming evidence at trial is that Wife maintained her intent to separate and that it continued throughout the separation period and her actions demonstrate the same."); *see also supra* note 1.

character of the intent that would satisfy the durational requirement imposed by Code § 20-91(A)(9). The concurrence asserts that we should not address the legal character of the required intent because it was "not argued by either party." *Post* at 20. This assertion implies that we are making a sua sponte ruling on the legal character of the required intent. The only stated basis for this assertion appears to be that a word search of the record and briefs does not include the adjective "predominating" within the same sentence as intent. *See post* at 21 note 2. This is too weak a limb to support such a strong charge.

The parties, the trial judge, the Court of Appeals judges, and all the Justices of this Court agree that intent is required. We also all know that the word "intent" is an "ambiguous and elastic term," *United States v. Bailey*, 444 U.S. 394, 404 (1980), and it is no small task to articulate its conceptual boundaries. Our concurring colleagues do not even attempt to do so. The parties' competing challenges to the sufficiency of the evidence, however, require us to articulate the legal character of the required intent. Whether the divorce decree in this case should be vacated or affirmed depends on which of the many subtle gradations of intent best applies in the unique context of a divorce. Black's Law Dictionary lists multiple semantic categories of intent and subtle variations within those categories. *See* Black's Law Dictionary, *supra*, at 963-64. Our adoption of one of them as normative in the context of a divorce case is not a sua sponte, extrajudicial exercise of judicial power. It is the task at hand.

E.

We next consider whether our disagreement with the reasoning of the Court of Appeals requires us to reverse its affirmance of the trial court's divorce decree entered pursuant to Code § 20-91(A)(9). The answer would be clear if the trial court had expressly adopted the Day-1 thesis asserted by the Court of Appeals and rejected the traditional view that we have affirmed.

15

In that case, we would reverse the judgment of the Court of Appeals, vacate the trial court's divorce decree, and remand the case to the trial court to reconsider the evidence under the proper legal standard. In this case, however, that remedy is unwarranted.

1.

"Absent clear evidence to the contrary in the record, the judgment of a trial court comes to us on appeal with a presumption that the law was correctly applied to the facts." *Yarborough v. Commonwealth*, 217 Va. 971, 978 (1977). Today, as in years past, "nothing is better settled than that everything is to be presumed in favor of the correctness of the rulings of a court of competent jurisdiction, when brought under review in an appellate tribunal, until the contrary is shown." *Early v. Commonwealth*, 86 Va. 921, 925 (1890).

The presumption holds true even if a trial court does not specifically articulate its factual findings. "In Virginia, a trial court has no common law duty to explain in any detail the reasoning supporting its judgments." *Pilati v. Pilati*, 59 Va. App. 176, 180 (2011). "Absent a statutory requirement to do so, 'a trial court is not required to give findings of fact and conclusions of law.'" *Bowman v. Commonwealth*, 290 Va. 492, 500 n.8 (2015) (quoting *Fitzgerald v. Commonwealth*, 223 Va. 615, 627 (1982)). Trial judges sometimes refrain from providing a detailed explanation because they understandably think "the reasons self evident." *Freeman v. Peyton*, 207 Va. 194, 196 (1966). "Others may conclude that, in some cases, saying too much is as detrimental as saying too little. The correct balance depends on the unique context of each case, the informative value of an explanation, and the possibility of inflaming an interminable dispute with an overly detailed explanation." *Pilati*, 59 Va. App. at 180.

After sitting through eight days of trial, the trial court in this divorce case held that the wife, by a preponderance of the evidence, satisfied her burden of proving that she had the

16

requisite intent to justify a divorce pursuant to Code § 20-91(A)(9). That statute, unlike others in Title 20, does not expressly require a trial court to articulate orally or in writing specific findings of fact.[15] Absent such a statutory requirement, we will not imply one. "When judges are required to make factual findings, it is by express directive, not by oblique reference." *Morrissey v. Virginia State Bar ex rel. Third Dist. Comm.*, 297 Va. 467, 475 (2019).

Even "in the absence of specific factual findings," we presume that "the trial court resolved all factual ambiguities or inconsistencies in the evidence in favor of the prevailing party and gave that party the benefit of all reasonably debatable inferences from the evidence." *Hill v. Commonwealth*, 297 Va. 804, 808 (2019). The presumption can be rebutted only when "clear evidence to the contrary in the record," *Bottoms v. Bottoms*, 249 Va. 410, 414 (1995), makes the presumption indefensible.

In this case, no clear evidence in this record rebuts the presumption of correctness. The only specific factual finding in the trial court's order stated that "[t]here is no hope or possibility of reconciliation between the parties." R. at 507. The total absence of any hope or even the possibility of saving this marriage does not undermine the wife's position that the intent to separate permanently continued throughout the prior statutory period. If anything, this finding arguably lends indirect support for the wife's claim that her intent predominated during this period.

2.

Though we presume that the trial court correctly applied the law to the facts, we still must determine the sufficiency of the evidence supporting the court's ultimate judgment. In making

---

[15] *See, e.g.*, Code § 20-124.3 (governing orders deciding child custody and visitation); Code § 20-107.1(F) (governing orders in contested cases "granting, reserving or denying a request for spousal support").

17

this determination, we "view the facts in the light most favorable to the party prevailing before the trial court" and "resolv[e] all conflicts in the evidence in her favor." *Bottoms*, 249 Va. at 414.

The wife's divorce complaint specifically alleged that "[a]t least one of the parties intended to live separate and apart for at least one year and that their *intent has remained constant* for at least a year." R. at 1-2 (emphasis added). She supported this assertion by testifying that her "intention was continuous and without interruption, from July 14 of 2014, until today" to permanently live separate and apart. *Id.* at 798. She additionally testified that there was never "a time when [she] intended that [she] and [the husband] would get back together." *Id.* at 1166.

We acknowledge the husband's evidence challenging the wife's profession of intent. But in this case, as with all others, factual inferences supporting a trial court's judgment are accepted on appeal unless those inferences are "so attenuated that they 'push "into the realm of non sequitur."'" *Bowman*, 290 Va. at 500. Considering the evidence in this case, we ask only whether a rational factfinder could have found by a "preponderance of the evidence," *Williamson v. Johnson*, 164 Va. 632, 637 (1935), that the wife intended to permanently live separate and apart from her husband during the statutory period required by Code § 20-91(A)(9). Because a rational factfinder could so find, the trial court's judgment in this case cannot be set aside as "plainly wrong or without evidence to support it." Code § 8.01-680.

### III.

As the Court of Appeals correctly observed, this is a case of first impression. Our first and last impression is that the traditional view, expressly restated in Code § 20-106(B)(5) and implicitly recognized by the practicing Virginia bar, provides a uniform principle of law

18

applicable to both contested and uncontested divorces by separation pursuant to Code § 20-91(A)(9).[16]  Under this view, the intent to permanently live separate and apart must predominate during the statutory period.  For these reasons, we reject the reasoning of the Court of Appeals but on this issue affirm its judgment.[17]

*Affirmed on other grounds.*

JUSTICE POWELL, with whom CHIEF JUSTICE GOODWYN and JUSTICE MANN join, concurring

I agree with the majority's ultimate conclusion that the evidence was sufficient to grant the divorce.  However, I find the majority's analysis somewhat confusing.  The issue before the Court is whether, under Code § 20-91(A)(9)(a), a divorcing spouse's intent to "remain separate and apart" must be "continuous" throughout the separation period.[1]  If I follow the majority's logic, yes, the character of the intent plays a role in the analysis.  But the real question in this case is the *duration* of the intent, whether wavering or unwavering.

---

[16] Our concurring colleagues raise "practical application concerns" with our holding and speculate about various hypotheticals applying it in future cases.  *Post* at 30-33.  We will not address these scenarios other than to say that a concurrence, like a dissent, "is generally not the best source of legal advice on how to comply with the majority opinion." *Students for Fair Admissions, Inc. v. President & Fellows of Harv. Coll.*, 600 U.S. 181, 230 (2023).

[17] "It follows," as the Court of Appeals correctly held, "that the trial court did not err in relying on the 2014 separation date when determining its equitable distribution award and spousal support award." *Lisann*, 78 Va. App. at 248.  In an unpublished order issued today, we review the unpublished Court of Appeals opinion, *Lisann v. Lisann*, Record No. 0120-22-4, 2023 WL 5020939 (Va. Ct. App. Aug. 8, 2024), which addressed additional challenges raised by the husband to the trial court's divorce decree.

[1] Indeed, Mr. Lisann's first assignment of error states:  "The Court of Appeals erred when it affirmed the trial court's separation date finding by holding, for the first time, that in a separation-based divorce the intent to remain separated need not remain throughout the separation period."

19

In *Hooker v. Hooker*, we concluded that the intent to permanently separate must be present on day one of the separation period. 215 Va. 415, 417 (1975). In Code § 20-106, the General Assembly used the term "continuous" to describe the duration of the intent for the purposes of that statute. As I read the majority opinion, I am not sure whether my colleagues use "predominating intent" as a concept of weight (i.e., sufficiency) or time. If it is a concept of weight, then in my opinion, it fails to fully answer the question before us. For the question remains: "predominating" for how long? If it is a concept of time, then in my opinion it fails because it finds no support in the words used by the legislature, the rules of statutory construction, or the historical backdrop of the two relevant statutes, and it was not argued by either party.[2] Thus, I conclude that there is scant support for the proposition that the creation of a "predominating intent" rule was the legislature's intent.

---

[2] The majority suggests that the parties disputed at trial "whether the intent to permanently live separate and apart need only be demonstrated to exist on the first day of the separation period or rather to predominate throughout the statutory period." Slip op. at 3. The majority further contends that they disputed not only the duration of the intent to separate, but also the "legal" or "intrinsic" character of the intent. *Id.* at 3 n.1; *see also id.* at 14-15. However, I do not find support for this position as expressed by the majority in the record.

Clearly, the parties' principal argument was about the duration of the necessary intent, and the majority acknowledges this. *See* slip op. at 14. Mr. Lisann consistently argued that the intent must be *continuous* throughout the statutory period, not simply predominate. *See, e.g.*, R. 1023-24, 2693; CAV Opening Br. at 18-20; SCV Opening Br. at 13-26. By contrast, Ms. Lisann consistently argued that the intention need only be shown at the beginning of the statutory period, in line with *Hooker v. Hooker*, 215 Va. 415 (1975). *See, e.g.*, R. 1027-29; 2643-46; CAV Appellee Br. at 11-17; SCV Appellee Br. at 11-31. Curiously, the word "predominating" does not appear in the record from the circuit court or the Court of Appeals, or in the briefs filed in this Court.

In any event, the "intrinsic" character of intent — whether the divorcing spouse had an intent to permanently separate — appears to be a sufficiency and credibility question. As the prevailing party below, the trial court credited Ms. Lisann's testimony, which was corroborated by four witnesses, that she intended to permanently separate from her husband in July 2014. R. 798, 813, 1166, 1185, 1191, 1370, 1185, 1458-60. But again, the principal question in this case is *how long* the intent must exist.

I.

When interpreting a statute, "our primary objective is to 'ascertain and give effect to the legislative intent' as expressed in the language used in the statute." *Cuccinelli v. Rector & Visitors of the Univ. of Va.*, 283 Va. 420, 425 (2012) (citing *Commonwealth v. Amerson*, 281 Va. 414, 418 (2011)). "When the language of a statute is unambiguous, we are bound by the plain meaning of that language." *Conyers v. Martial Arts World of Richmond, Inc.*, 273 Va. 96, 104 (2007).

Generally, the Court reads statutes with the same common purpose or dealing with the same subject matter *in pari materia*. *Morgan v. Commonwealth*, 301 Va. 476, 481 (2022). That is, the Court reads these statutes, including later enactments, in harmony to provide for internal consistency and uniform operation. *See id.* (quoting *Prillaman v. Commonwealth*, 199 Va. 401, 405 (1957)). More importantly, however, this Court has also recognized that "when the General Assembly has used specific language in one instance but omits that language or uses different language addressing a similar subject elsewhere in the Code, [the Court] must presume that the difference in the choice of language is intentional." *Id.* at 482 (quoting *Zinone v. Lee's Crossing Homeowner's Ass'n*, 282 Va. 330, 337 (2011) (alteration in original)). Indeed, "[c]ourts must rely on this presumption because under these circumstances, it is evident that the General Assembly knows how to include such language in a statute to achieve an intended objective, and therefore the omission of such language in another statute represents an unambiguous manifestation of a contrary intention." *Id.* (internal quotation marks omitted) (citing *Brown v. Commonwealth*, 284 Va. 538, 545 (2012)).

If one thing is clear, it is that the General Assembly used different language in Code §§ 20-91(A)(9)(a) and 20-106(B)(5). Although both statutes are part of the same title and

21

chapter of the Code, the General Assembly intended for them to have different meanings. Among other grounds for divorce, Code § 20-91(A)(9)(a) provides for a no-fault divorce "on the application of either party if and when they have lived separate and apart without any cohabitation and without interruption for one year."

In 2012, the General Assembly amended Code § 20-106 to provide a mechanism for parties seeking an uncontested no-fault divorce under Code § 20-91(A)(9)(a) to proceed via affidavit as opposed to in-court testimony. 2012 Acts ch. 72. In relevant part, Code § 20-106(B)(5) provides that the affiant shall "[a]ffirm that the parties have lived separate and apart, continuously, without interruption and without cohabitation, and with the intent to remain separate and apart permanently, for the statutory period required by subdivision A (9) of § 20-91."

As my colleagues acknowledge, the plain language of the Code § 20-91(A)(9)(a) does not contain an express intent element. Rather, this Court first recognized an implied intent requirement in *Hooker*. In that case, the husband filed for divorce in November 1972, and he alleged that he lived separate and apart from his wife, without cohabitation and without interruption since August 1970, when he moved to Vietnam for work. 215 Va. at 416. However, he did not express an intent to separate until he sought legal counsel to obtain a divorce in May 1972. *Id.* The issue before the Court was whether a party must demonstrate an intent to separate permanently to begin the statutory separation period. *Id.* The Court held that "as a prerequisite for a divorce under Code § 20-91(9), there must be proof of an intention on the part of at least one of the parties to discontinue permanently the marital cohabitation, *followed by* a physical separation for the statutory period." *Id.* at 417 (emphasis added). The rule in *Hooker* merely requires that at least one of the parties demonstrate that they had the intent to live separate and

22

apart permanently at the *beginning* of the applicable separation period. *Id.* at 417 (emphasis added). *Hooker* did not impose a requirement that a party must demonstrate that they had a predominating intent to live separate and apart permanently *throughout* the separation period.

Indeed, the Court of Appeals reaffirmed this rule in 2010. In *Andrews v. Creacey*, the parties lived separate and apart since November 2005 and the husband formed the intent to separate permanently in August 2006. 56 Va. App. 606, 622 (2010). The husband was found to be incapacitated in January 2007, and his co-guardians filed a complaint for divorce on his behalf in December 2008. *Id.* On appeal, the wife argued, in relevant part, that the trial court erred in granting the divorce because the husband failed to prove that he maintained a continuous intent throughout the separation period because of his incapacity. *Id.* at 623. In rejecting this argument, the Court of Appeals made *Hooker*'s reach more definitive: "Once one of the parties entertained an intent to separate, and the parties have lived separate and apart without any cohabitation and without interruption for one year, the grounds of divorce are complete." *Id.* at 623.

While the facts of *Hooker* and *Andrews* are not the facts of this case, to the extent that Virginia appellate courts have spoken of a general intent requirement, we have limited that requirement to a demonstration of intent to remain separated at the commencement of the statutory period. We have never said that the party's intent must "predominate" throughout the one-year period.

The General Assembly has amended Code § 20-91 six times since our decision in *Hooker* and one time since the Court of Appeals' decision in *Andrews*. 1975 Acts 644;[3] 1982 Acts ch.

_____

[3] *Hooker* was decided on January 20, 1975. The 1975 amendment was enacted on March 24, 1975.

308; 1986 Acts. ch. 397; 1988 Acts ch. 404; 1997 Acts chs. 794, 898; 2020 Acts chs. 270, 900.

Notably, the General Assembly has never added an express intent requirement into what is now

subsection (A)(9)(a), much less added a predominating intent requirement. Indeed, the General

Assembly has taken no action to expand the intent requirement articulated in *Hooker* – i.e., that

the necessary intent existed at the beginning of the separation period. *See Weathers v.*

*Commonwealth*, 262 Va. 803, 805 (2001) ("When the General Assembly acts in an area in which

one of its appellate courts already has spoken, it is presumed to know the law as the court has

stated it and to acquiesce therein, and if the legislature intends to countermand such appellate

decision, it must do so explicitly.").

In contrast with Code § 20-91(A)(9)(1), the General Assembly did include an express

intent requirement in Code § 20-106(B)(5). Both *Hooker* and *Andrews* had already been decided

by 2012 when the General Assembly added this language. *See id.* In 2020, the General

Assembly amended Code § 20-91(A)(9)(a) for the first time since the 2012 amendment to Code

§ 20-106(B)(5), and again it chose not to address the markedly different language between the

two statutes. 2020 Acts. chs. 270, 900.[4] Had the General Assembly intended for there to be a

continuous or even predominating intent requirement in Code § 20-91(A)(9)(a), it could have

easily added it at this time, just as it did when amending Code § 20-106(B)(5) in 2012. This

omission is instructive and significant. *See Morgan*, 301 Va. at 482. The omission of

predominating intent language in Code § 20-91(A)(9)(a) represents an "unambiguous

---

[4] In fact, the General Assembly addressed both Code §§ 20-91 and 20-106 in 2020 Acts ch. 900; however, the only edit to these statutes was to use gender neutral language.

24

manifestation of a contrary intention." *Id.* (internal quotations omitted) (citing *Brown v. Commonwealth*, 284 Va. 538, 545 (2012)).[5]

## II.

The majority bases its predominating intent[6] rule on its interpretation of Code § 20-106(B)(5) and the "traditional view" of the family law bar. However, in my opinion, neither of these sources support the majority's rule.

The majority suggests that Code § 20-91(A)(9)(a) is ambiguous because it does not contain an intent element and relies heavily on Code § 20-106(B)(5) to resolve the perceived ambiguity. As set forth above, I do not find that Code § 20-91(A)(9)(a) is ambiguous. *See supra* Part I. However, in order to address the majority's position, assuming for the sake of argument

---

[5] Code § 20-107.1(G) is also instructive and further supports the notion that a party need not demonstrate a predominating intent that the separation be permanent. For the purposes of calculating spousal support, Code § 20-107.1(G) defines "date of separation" as "the earliest date at which the parties are physically separated and at least one party intends such separation to be permanent provided that the separation be continuous thereafter." The plain language of this statute also does not require predominating intent throughout the statutory period. Rather, this statute is in line with the rule articulated in *Hooker*. *See* 215 Va. at 417. Even if some Virginia lawyers "have long held" the view that the intent to permanently separate must continue throughout the statutory period, the General Assembly did not adopt that "view" as evidenced by its word choice in Code § 20-107.1(G). *See* slip op. at 6; *infra* nn. 8-9. As both a logical and practical matter, the date of separation for calculating support and the date of separation to establish the grounds of divorce under Code § 20-91(A)(9)(a) should be consistent. Therefore, the absence of a predominating intent element in Code § 20-107.1(G) further supports the notion that its absence in Code § 20-91(A)(9)(a) is intentional.

[6] It is worth noting that the majority does not expressly define "predominating" intent. Surely, answering the durational question at the heart of the case requires a definition of this new standard. Must the intent be present 51% of the statutory period, akin to a preponderance standard? Must the intent be present 85% of the statutory period? Mr. Lisann argued for a continuous intent, but the majority at least suggests "predominating" does not mean "continuous." Slip op. at 14 n.12.

In justifying this new "category of intent," the majority points to the list of variations of intent in Black's Law Dictionary and suggests that it is adopting one of them. *Id.* at 15 (citing Black's Law Dictionary 963-64 (2024)). Curiously, "predominating intent" does not appear in the list. *See* Black's Law Dictionary, *supra*, at 963-64. This only further begs the question of what does "predominating intent" mean?

25

that Code § 20-91(A)(9)(a) is ambiguous, I would nevertheless reach the same conclusion that the statute does not require a "predominating intent" for several reasons.

First, I do not believe that Code § 20-106(B)(5) is as clear as the majority suggests. The plain language of Code § 20-106(B)(5) provides that the affiant shall "[a]ffirm that the parties have lived separate and apart, *continuously*, without interruption and without cohabitation, and *with the intent to* remain separate and apart permanently, for the statutory period required by subdivision A (9) of § 20-91." (Emphases added). The statute uses both "continuously" and "with the intent to" (which, under the majority's view, is an undefined "predominating" standard). However, continuous and predominating are not synonymous. "Predominate" means "to hold advantage in numbers or quantity." Webster's Third New International Dictionary 1786 (1993). In contrast, "continuous" means "characterized by uninterrupted extension in time or sequence; operated without interruption." *Id.* at 494. By its very definition, continuous is a higher burden than predominating.

My colleagues offer one grammatical and syntactical interpretation of this statute to resolve the perceived ambiguity regarding the intent required under Code § 20-91(A)(9)(a). *See* slip op. at 10-11 and nn. 9-10. As I understand the majority's position, the present-perfect verb tense of "have lived" requires that the intent *predominate*. However, the sources relied upon for this point would indicate that the intent must *continue* into the present, not simply predominate throughout the separation period. *Id.* at 10 n.9 (citing Bryan A. Garner, Garner's Modern American Usage 779 (2003)). Then, the majority suggests that the syntactical structure of Code § 20-106(B)(5) further supports a predominating intent because the prepositional phrase "for the statutory period" modifies how long the parties must have lived "without interruption and without cohabitation, and with the intent to remain separate and apart permanently." *Id.* at 11

26

and n.10.  In explaining this point, however, the majority appears to read "continuously" —

which precedes the identified list of prepositional phrases — out of the statute.  *Id.* at n.10.  In

my view, the majority's grammatical and syntactical analysis of Code § 20-106(B)(5) adds an

implied "predominating intent" element to make an already ambiguous statute even more so.

Additionally, I am compelled to point out that the majority's interpretation of Code

§ 20-106(B)(5) has implications for the requirement that "the parties have lived separate and

apart, continuously, without interruption and without cohabitation."  If the intent must only

"predominate," then it would seem that this standard applies to "without interruption and without

cohabitation" as well.  In my opinion, this extension would be wholly unsupported by our

existing case law.  *Cf. Roberts v. Pace*, 193 Va. 156, 159 (1951) (couple's "casual cohabitation"

absent the "resumption of normal married life together" is insufficient to "to show a

reconciliation or an agreement to live and cohabit together again on a permanent basis as" a

married couple); *Jacobsen v. Jacobsen*, 41 Va. App. 582, 590 (2003) (suggesting that cohabiting

on a "spasmodic" basis during the separation period is insufficient to show reconciliation).

By contrast, the unanimous panel of the Court of Appeals offered a different and

plausible grammatical and syntactical interpretation of Code § 20-106(B)(5), which gives effect

to each word and phrase within the statute.  *See Lisann v. Lisann*, 78 Va. App. 225, 242-43

(2023) (concluding that "for the separation period required by subdivision A(9) of § 20-91" is a

fifth condition that independently modifies the separation period, not the preceding phrase "and

with the intent to remain separate and apart permanently").  Though I find the Court of Appeals'

grammatical interpretation to be more convincing, I believe that the competing grammatical

interpretations only lend themselves to a conclusion that Code § 20-106(B)(5) is ambiguous, at

best.[7] Such ambiguity cannot provide the clarity on which the majority's position is premised. The lack of clarity regarding Code § 20-106(B)(5) only serves to bolster the position that the General Assembly did not intend to include a predominating — or even continuous — intent requirement in Code § 20-91(A)(9)(a). As I previously explained, the General Assembly's failure to include an express intent provision in Code § 20-91(A)(9)(a) must have some meaning in light of the General Assembly's decision to include an express intent provision in Code § 20-106(B)(5).

Second, my colleagues emphasize that the "traditional view" of Virginia lawyers supports the predominating intent rule.[8] Specifically, they note that it is the longstanding practice of the family law bar to plead facts asserting that the plaintiff has maintained a predominating intent to permanently separate throughout the statutory period.[9] They cite a plethora of form complaints from family law practice handbooks to illustrate this point. *See* slip op. at 6 n.4. However, in the

---

[7] Furthermore, to the extent that Code § 20-106(B)(5) is ambiguous, any resolution of the ambiguity here would be dicta. We are only called upon to interpret Code § 20-91(A)(9)(a) because the parties in this case did not proceed via affidavit under Code § 20-106(B)(5).

[8] Interestingly, the majority seems to shift its position, without explanation, on what exactly is the "traditional view." First, when discussing Code § 20-107.1(G), the majority suggests that the Family Law Section of the Virginia State Bar thought that the intent must remain throughout the statutory period, which would seemingly require the intent to be continuous. *See* slip op. at 6. Then, the majority suggests that the "traditional view" "understandably focuses on the predominating intent during the statutory period." *See id.* at 7. As discussed in Part II, continuous and predominating are not synonymous.

[9] In my opinion, there is no "traditional view" embracing a continuing or predominating intent requirement in Virginia. The views expressed in sample divorce complaints in family law practice handbooks demonstrate the efforts of practitioners to interpret and advise on the law, but they represent neither controlling precedent nor a majority perspective. Further, it is the role of the Court, not the bar, to interpret the law. Va. Const. art. VI, sec. 1; *see also Owens v. Commonwealth*, 211 Va. 633, 638 (1971) ("It is the function of the judiciary to interpret statutes. Rewriting them is the function of the legislature.") (citing *Caldwell v. Commonwealth*, 198 Va. 454, 459 (1956)). If anything, these "views" indicate that some practitioners would benefit from this Court's clarification on the issue at hand.

sections of these handbooks that explain the law establishing the grounds of divorce — which underlie the forms relied upon by the majority — none of the authors suggest that Code § 20-91(A)(9)(a) or case law requires a predominating intent throughout the statutory period.[10] Indeed, to the extent that the writers cite any authority for their proposition, they cite *Hooker*. And, both the majority and I agree that *Hooker* does not stand for the proposition that a party must demonstrate a predominating intent throughout the separation period.

While I recognize that it is tempting to extrapolate backwards from Code § 20-106, for the reasons that I have stated, I do not believe that such an interpretation finds support in the law. As discussed above, neither the plain language of Code § 20-91(A)(9)(a) nor this Court have ever required a party to demonstrate that they maintained a predominating intent to separate

---

[10] *See* 1 Julia S. Savage, Virginia Family Law: A Systematic Approach 82-83 (10th ed. 2024) (to establish the grounds for divorce of a separation based on six or twelve months, "at least one of the parties must have intended for the separation to be permanent at the time it commenced"); 1 Richard Balnave, Virginia Family Law: A Systematic Approach 74-75 (5th ed. 2014) (to establish the grounds for divorce of a separation based on six or twelve months, "at least one of the parties must have intended for the separation to be permanent at the time it commenced"); John Byrnes & Margaret F. Brinig, Virginia Domestic Relations Handbook, § 19.10, at 19-22 (2025 ed.); Brian M. Hirsh & Danielle V. Poliner, Virginia Family Law Trial Handbook: Pleadings, Evidence, and Strategies 12-13 (no discussion of intent). *See also* 9 Dale M. Cecka, James R. Cottrell, and Craig Sampson, Family Law: Theory, Practice, and Forms, §§ 8:3, 8:5 (2024 ed.) (suggesting the intent of the parties to live separate and apart permanently must be shown to exist at the beginning of the separation period); 2 Richard Balnave, Virginia Family Law: A Systematic Approach 729, at App. 10-12 (5th ed. 2014) (checklist of information to be presented at trial, including that "either party has the intent to remain permanently separated at the commencement of the separation").

Similarly, the Virginia Civil Benchbook does not list predominating intent as an element to obtain a no-fault divorce under Code § 20-91(A)(9)(a). Supreme Ct. of Va. Benchbook Comm., Virginia Civil Benchbook for Judges and Lawyers § 7.06(1)(a)(iv), at 7-46 ("[B] At least one of the parties must intend to live separate and apart permanently.") (citing *Hooker*, 215 Va. 415). In fact, the proposed checklists for general divorces pursuant to Code §§ 20-91 and 20-106 differ. *Compare id.*, § App.23, at A-57 (general checklist for divorce based on one year separation requires "[p]roof that [sic] separation with intent to remain permanent?") (citing *Hooker*, 215 Va. 415), *with* § App.25, at A-66 (checklist for divorce by affidavit requiring demonstration of "[i]ntent to remain separate & apart for statutory period").

29

permanently throughout the separation period. In reaching this conclusion, I acknowledge that the usage of different language in Code § 20-106 has the effect of creating two separate forms of evidence for divorce in Virginia. While I will not speculate as to why the General Assembly did this, the legal analysis inevitably leads to this result.

III.

Aside from the lack of foundational support for the majority's predominating intent rule, the rule also presents issues for practical application. Even if the predominating intent rule is a preponderance standard that may be easily applied in the context of a one-year separation where a party files for divorce on day 366, what about in instances where the separation period spans several years before a party files for divorce? Can the predominating intent be cobbled together over the course of several years?

For example, a couple has two children. On day 1, Spouse A intends to permanently separate and moves out of the marital home. Four months later, Spouse B suggests to Spouse A that they try marriage counseling to work things out for the sake of their children. Spouse A agrees to try counseling, but the parties maintain separate residences. After 7 months of unsuccessful sessions, at the beginning of month 12, Spouse A reaffirms their intent to move forward with the divorce. Three months into the second year of the separation, Spouse B suggests that they try counseling one more time. Spouse A obliges and the couple pursues counseling for the next 6 months; however, the effort is once again unsuccessful. During the final 3 months of year 2, Spouse A reaffirms their intent to move forward with the divorce. On day 1 of year 3, Spouse A files a complaint for divorce pursuant to Code § 20-91(A)(9)(a).

Under the predominating intent approach, it is unclear what the outcome would be. Spouse A had the intent to permanently separate for 11 months over the course of the two-year

30

separation period: 5 months in the first year, and 6 months in the second year. However, Spouse A did not have a "predominating intent" to permanently separate in any individual year. Under the majority's rule, could a circuit court nevertheless conclude that Spouse A had the necessary "predominating intent" to permanently separate by adding up the months across several years to satisfy the statutory period in Code § 20-91(A)(9)(a)? Or does the party's intent have to predominate over one calendar year to satisfy the majority's rule? And if it is a calendar year, is it the first year of the separation period or the calendar year immediately preceding the filing? The majority outrightly dismisses and refuses to engage with these practical application concerns. Slip op. at 19 n. 15.[11] In my view, the application of the majority's rule becomes more unworkable the longer the separation period continues. As the above hypothetical demonstrates, the majority's predominating intent rule has the potential to bog down divorce proceedings by allowing parties to litigate the existence of the intent to divorce on a day-by-day basis. Such a granular approach for determining whether sufficient intent to divorce exists has never been contemplated by this Court or the General Assembly. Indeed, applying the predominating intent rule would become an anathema to trial courts who would be required to resort to calendars and calculators to determine whether the parties have met the requisite amount of intent.

The rule in *Hooker* is much cleaner and easier to apply. The majority rejects the "Day-1 thesis" that would allow for a party to obtain a divorce at the end of the statutory period, so long as they had a genuine intent to separate permanently on day 1 of the statutory period, even if they rescinded their intent on day 2, but never fully reconciled. *See* slip op. at 8-10. First, this

---

[11] In passing, however, the majority suggests that the "predominating intent" must be present in only Year 1. *See* slip op. at 14.

scenario is unlikely to occur. For the "Day-1" thesis example to be realistic, the party, whether or not they maintain an intent, would have to stay separate and apart and without cohabitation for the statutory period in order to obtain a divorce. If the party's intent seriously dissolved on day 2, it is unlikely that they would remain separate and apart without cohabitation for an additional 364 days or that they would not dismiss the divorce suit they had filed. However, if this scenario did occur, under my interpretation of *Hooker*, the answer would be simple: the lack of "predominating intent" during the separation period would not prevent a divorce so long as the couple lived separate and apart without interruption and without cohabitation for the statutory period.

Moreover, our case law regarding reconciliation serves as a safeguard against concerns about instant divorce. "Reconciliation is the resumption of one's marital status by voluntarily living together, openly as husband and wife." *Jacobsen*, 41 Va. App. at 590. "Reconciliation means more than simply cohabitation or the observance of civility; it comprehends a fresh start and *genuine* effort by both parties." *Id.* (citing Black's Law Dictionary 1272 (6th ed. 1990)) (emphasis in original). To demonstrate reconciliation, there must be "proof that the parties intend to live together as husband and wife and take up their respective roles in the relationship." *Id. See also Roberts*, 193 Va. at 159 (suggesting that casual cohabitation, after a separation, without the resumption of normal married life, is insufficient to show reconciliation on a permanent basis). Although reconciliation is often discussed in the context of cohabitation, good faith reconciliation necessarily involves a change in the parties' intent to resume the marital relationship rather than pursue a divorce. *Jacobsen*, 41 Va. App. at 591.

We have repeatedly stated that the separation period is "designed primarily to give the parties an opportunity to reconcile and to determine if they desire the separation to be final."

32

*Coe v. Coe*, 225 Va. 616, 620; *Hooker*, 215 Va. at 417 (suggesting the separation period is to provide the parties an "opportunity for reconciliation"); *see also Jacobsen*, 41 Va. App. at 589-90 ("The public policy of the Commonwealth of Virginia is to encourage reconciliation of separated spouses and to preserve marriage.") (citing *Coe*, 225 Va. at 619-20). If a party must prove a "predominating intent" to separate throughout the separation period, then they could be disinclined to attempt reconciliation for fear that it would be interpreted as a change in their intent. For example, if parties attempt to reconcile by pursuing counseling for an extended period – say 6.5 months – but those efforts are ultimately unsuccessful, does the clock start over? Can one attempt good faith reconciliation and simultaneously maintain a predominating intent to divorce throughout the statutory period?

For these reasons, the majority's predominating intent rule raises practical application concerns, while the longstanding rule from *Hooker* and the plain language of Code § 20-91(A)(9)(a) provide a manageable standard for circuit court judges to apply.

IV.

In summary, the plain language of the Code § 20-91(A)(9)(a) and our case law have never required a party to demonstrate a predominating intent throughout the separation period to satisfy the grounds of divorce. If the General Assembly intended the parties to demonstrate a predominating intent to obtain a divorce under Code § 20-91, it would have expressly incorporated that standard into the statute. Instead, the majority's interpretation effectively substitutes words that the General Assembly did not see fit to include into not just one, but two statutes.

I would simply apply the rule in *Hooker* and conclude that the evidence was sufficient to establish that the wife satisfied the grounds for divorce under Code § 20-91(A)(9)(a) because she

33

had the requisite intent in July 2014 and then lived separate and apart throughout the statutory period.  Therefore, I would affirm the decisions of the Court of Appeals and the circuit court.